STATE of Alaska, Petitioner,

v.

Edward A. DANIEL, Respondent.

No. 3485.

Supreme Court of Alaska.

Jan. 19, 1979.

---

**20.** *See State v. Chaney,* 477 P.2d 441 (Alaska 1970).

Rhonda F. Butterfield and Richard J. Ray, Asst. Dist. Attys., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for petitioner.

Dick L. Madson, Cowper and Madson, Fairbanks, for respondent.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

RABINOWITZ, Justice.

We have granted the state's petition for review from an order of the superior court which suppressed evidence obtained as a result of a routine inventory search of Edward Daniel's automobile, subsequent to his arrest for the offense of driving while under the influence of intoxicants.

At approximately 3 a. m. on March 13, 1977, Alaska State Trooper Litera was investigating several accidents which had occurred in the parking lot of a Fairbanks nightclub. While in the course of his investigation, Trooper Litera observed an automobile, operated by Edward Daniel, plunge down a 25-foot embankment from the highway into the parking lot of the nightclub and strike two parked vehicles. Daniel emerged from his vehicle as Trooper Litera approached. According to the trooper, Daniel's breath smelled slightly of alcohol, his eyes were bloodshot and his speech was somewhat incoherent. Daniel had his motor vehicle registration but encountered some difficulty in locating and producing his operator's license. Trooper Litera requested Daniel to stand still while he went to the police car to obtain a notebook. Despite this request, Daniel returned to his car and started the engine. As the trooper again approached, Daniel emerged from his vehicle and locked it. Trooper Litera administered field sobriety tests and placed Daniel under arrest for operating a motor vehicle while under the influence of intoxicants.

According to the state's brief, Trooper Litera "decided that the defendant's vehicle must be impounded, pursuant to 13 AAC 02.350, since there was no one else in the vehicle."[1] Trooper Litera therefore requested another trooper to conduct an in-

---

1. 13 AAC 02.350 provides:

 *Custody of a Vehicle When Operator is Arrested.* When a police officer arrests and detains the operator of a motor vehicle, the officer shall impound and remove the vehicle to a place of safety; however, the operator may elect to have another immediately available person who is legally licensed to operate a motor vehicle, drive or otherwise remove the vehicle as the operator directs. The operator may designate the nearest available garage or tow car operator of his choosing to remove the vehicle. If the operator does not so indicate, the officer shall make the arrangements necessary to remove the vehicle.

 The authority for this regulation was AS 28.05.-030(a). This statute provided that "[t]he com-missioner of public safety may adopt rules and regulations governing (1) the rules of the road, including the operation of motor vehicles upon roads and highways; . . . (4) the inspection of motor vehicles, and the removal of motor vehicles from the highways when they are found to be in a defective or unsafe condition; . . . ." AS 28.05.030(a) was repealed by ch. 178, § 6, SLA 1978.

 We note that the record we have is devoid of any evidence as to whether Daniel was given the opportunity to elect under 13 AAC 02.350 to have another available person operate the car or to designate the tow operator and place of safety under the regulation.

**410**

ventory of the property in Daniel's vehicle.[2] When he arrived at the scene, Trooper McGinnis asked Daniel where the keys to the car were; Daniel replied that he had thrown them into the snow after locking the vehicle.

A private wrecker was summoned by one of the troopers. Trooper McGinnis remained with Daniel's vehicle in order to inventory its contents before the wrecker removed the vehicle to a private impound lot.[3] Trooper McGinnis testified that he did not know if Daniel's automobile was in gear, but that it had to be taken out of gear or have the drive shaft disconnected before the car could be towed. After the operator of the private wrecker opened the door of the Daniel vehicle, Trooper McGinnis entered the car and commenced taking an inventory. According to the state, the following events occurred:

> From outside the vehicle, the trooper could see, on the back seat, a brown Samsonite briefcase with the top down and the latches open, facing toward the driver's side of the front seat. Trooper McGinnis lifted the lid of the briefcase. He saw a large plastic sack containing a green vegetable matter that appeared to

be marijuana and an automatic pistol. In the file section in the lid of the briefcase, the trooper found a clear plastic sack containing a white powder. He put the lid down, exited the car, and radioed Sgt. Litera to return to the scene. When Sgt. Litera returned, Trooper McGinnis again lifted the lid of the briefcase to show Sgt. Litera. Sgt. Litera took possession of the briefcase, and instructed the wrecker operator and Trooper McGinnis to take the defendant's vehicle not to the commercial impound lot, but to the Alaska State Trooper garage to be locked up for safekeeping.

The briefcase and its contents were inventoried. The next day the troopers obtained a search warrant to search the rest of the car; however, no further evidence was found.[4]

In response to Daniel's motion, the superior court suppressed all the evidence which was discovered as a result of Trooper McGinnis' action in opening the briefcase.[5] The superior court found that there was no showing of any exigent circumstances "nor of any independent ground" to justify a waiver of the warrant requirement. Rely-

---

2. The state asserts that the inventory was taken pursuant to authority found in 13 AAC 02.-375. 13 AAC 02.375 reads:

 *Inventory of impounded vehicle.* A police officer who impounds a vehicle for any reason provided by statute, ordinance or regulation shall conduct a complete inventory of the property in the vehicle at the time of impoundment or as soon after as is practicable. The inventory shall be reduced to writing and a receipt for the property shall be signed by the person to whom the vehicle is released at the time of release.

3. Trooper Litera had placed Daniel in the police vehicle and had proceeded to drive to trooper headquarters for the purpose of administering a breathalyzer test.

4. Laboratory tests subsequently revealed that the green vegetable matter was marijuana and that the white powder was cocaine. Daniel was thereafter charged with the felonies of possession of cocaine, possession of marijuana for sale and carrying a concealed weapon.

5. In so ruling, the superior court noted, in part, that in *Daygee v. State*, 514 P.2d 1159, 1166 (Alaska 1973), this court stated:

> The search [incident to arrest] referred to above, however, would only go to visible areas within easy reach of the suspect and would not permit the opening of closed spaces or opening of closed containers. The car should then be immobilized and stored pending further judicial process of search or release to a proper party.

The superior court also referred to that portion of our opinion in *Daygee* where we said:

> We again reiterate that the lawful seizure of the items does not carry with it the right to open such packages at a later point in time absent a warrant or exigent circumstances. If such packages are not opened at the time of arrest, then the factors set forth in *Erickson v. State*, 507 P.2d 508 (Alaska 1973), become applicable. The circumstances relating to the opening of packages become important and there must appear independent grounds other than those supporting the seizure to justify the waiver of the warrant requirement at such time.

*Daygee v. State*, 514 P.2d 1159, 1166–67, n.21 (Alaska 1973).

ing explicitly on the California Supreme Court's decision in *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), the superior court rejected the state's inventory rationale, stating:

> Even if the police were allowed to conduct an inventory search, there is no reason why closed containers, such as briefcases, need be [opened]. All that need be done is to catalog the briefcase together with the rest of the personal belongings of the car.[6]

We have granted review because the superior court's suppression order has, in effect, terminated the prosecution against Daniel.[7] Further, the legal issues involved are of such substance and importance as to justify deviation from normal appellate procedures by way of petition for review.[8] Also of significance to our decision to grant review is the fact that this court has not previously addressed the relationship between police inventory procedures and the guarantee of article I, section 14 of the Alaska Constitution against unreasonable searches and seizures.[9]

At the outset, we think it is important to articulate the precise issue which is before us. The state has conceded that Trooper McGinnis' search of the interior of the briefcase was not made incident to the lawful arrest of Daniel "because [he] had been removed from the scene prior to the time the wrecker operator unlocked" Daniel's vehicle as well as prior to the time Trooper McGinnis began his inventory. Additionally, the state concedes that the trooper lacked probable cause to search for evidence of a crime and that there was no need for the troopers to search the vehicle for their own physical protection.[10] The state's position is that inventory searches made pursuant to standard police procedures are "rebuttably presumed to be reasonable." The state further argues that such a rule would not preclude a court's finding that a particular "'inventory' search was, in fact, an illegal warrantless search in the guise of protecting impounded vehicles and their contents."[11]

Respondent Daniel views the state's concessions and the factual context in a somewhat different fashion. In addition to the concessions which we have alluded to, Daniel notes that the state has conceded he did not consent to a search of his vehicle "but in fact told the police he threw his keys in the snow to prevent them from entering the car;" that there was nothing in plain view which would permit seizure; and that the search was without a warrant.

The state conceptualizes the issue before us in the following manner:

> The issue in this case is whether the particular inventory search, that is, the opening of the unlocked, unlatched, five-inch wide briefcase by the trooper pursu-

---

**6.** The superior court concluded that "[w]ith closed containers the police should merely list the container as part of the property inventoried."

**7.** Alaska R.App.P. 23(c)(1).

**8.** Alaska R.App.P. 24(a)(1). In *Daygee v. State*, 514 P.2d 1159, 1165 n.13 (Alaska 1973), we noted, in part:

> Nothing herein should be taken to indicate the validity of inventory searches which appear to be clearly outside exigency rules.

**9.** Article I, section 14 of the Alaska Constitution provides, in part:

> The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated.

*Clark v. State*, 574 P.2d 1261 (Alaska 1978), is distinguishable factually. There we were concerned with an exigent circumstance—the destruction of evidence exception to the warrant requirement. It was concluded that the state had established probable cause to believe the vehicle contained evidence of contraband and that exigent circumstances existed for the warrantless search of a paper bag which was located in the glove compartment of the vehicle.

**10.** The state, in its brief, observes:

> [T]he purpose of the search incident to a lawful arrest is the physical protection of the officers and the prevention of destruction of evidence. *See Chimel v. California*, 395 U.S. 752 [89 S.Ct. 2034], 23 L.Ed.2d 685 (1969). Such purpose would not be applicable here.

**11.** Nevertheless, the state contends that "there are no facts in the instant case to indicate that a pretextual search took place here."

ant to standard inventory procedure mandated by regulation was reasonable.[12]

The state places primary reliance upon the United States Supreme Court's opinion in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman*, the Supreme Court discussed federal constitutional limitations on inventory searches of motor vehicles which have been impounded by the police. Opperman's car had been illegally parked in a restricted zone. The police issued an overtime parking citation warning that the car would be towed if not moved and placed the ticket on the car's windshield at approximately 3 a.m. Later that day, the car was towed to a city impound lot. At the lot a police officer saw in plain view inside the car a watch and various other items of personal property. The door to the impounded vehicle was unlocked at the direction of the officer and, using a standard procedure and form, he inventoried the contents of the car, including the contents of the unlocked glove compartment. A plastic bag of marijuana was found in the glove compartment. The bag was seized and Opperman was subsequently arrested after he appeared at the police department to reclaim his property. Opperman's motion to suppress the evidence yielded by the inventory search was denied, and he was convicted and sentenced. The Supreme Court of South Dakota reversed the conviction based on its conclusion that the evidence had been obtained in violation of the Fourth Amendment prohibition against unreasonable searches and seizures. Thereafter, the United States Supreme Court granted certiorari and Chief Justice Burger, writing for a majority of the Court, reversed the decision of the South Dakota Supreme Court.

In *Opperman*, the Supreme Court based its rulings on the distinction the Court traditionally had drawn between automobiles and homes or offices, that is, that there is a lower standard applied to automobiles in Fourth Amendment cases. The Court stated that the reasons for this distinction are twofold.

> First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. . . . Besides the element of mobility, . . . the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.[13]

The rationale given for the lesser expectation of privacy is that the automobile is subject to continuing and pervasive governmental regulation, including registration and inspection, and that automobile travel is necessarily of a public nature.

In *Opperman*, the Supreme Court further observed that impoundment inventory procedures developed in response to three needs: the protection of the owner's property; the protection of the police against claims or disputes over allegedly stolen property; and the protection of the police from potential danger.[14] In light of the foregoing, Chief Justice Burger stated:

> On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not 'unreasonable' under the Fourth Amendment.[15]

---

12. The respondent states the issue before us in the following manner:

Under the facts thus presented, the question is do the regulations in question permit a warrantless search of closed containers within a vehicle without the consent of the owner or operator?

13. *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976) (footnote omitted) (citations omitted).

14. *Id.* at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. The Supreme Court noted that these impoundment procedures have been viewed as essential to respond to incidents of theft or vandalism. Additionally, the Court noted that the police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

15. *Id.* at 376, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009.

In his concurring opinion, Justice Powell observed, in part:

Justice Marshall dissented,[16] arguing that the distinction drawn by the majority between automobiles and homes or offices is not supported by the law. He stated that although some characteristics of the automobile have resulted in lesser privacy expectations and have allowed warrantless searches, the mere fact that an automobile is involved does not necessarily imply that the Fourth Amendment loses its vitality. More particularly, Justice Marshall stated:

[O]ur cases have consistently recognized that the nature and substantiality of interest required to justify a search of private areas of an automobile is no less than that necessary to justify an intrusion of similar scope into a home or office.[17]

Justice Marshall also found fault with the three needs which the majority stated supported the practice of inventory searches

> The routine inventory search under consideration in this case does not fall within any of the established exceptions to the warrant requirement. . . . Inventory searches, however, are not conducted in order to discover evidence of crime. The officer does not make a discretionary determination to search based on a judgment that certain conditions are present. Inventory searches are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized. There are thus no special facts for a neutral magistrate to evaluate.

*Id.* at 383, 96 S.Ct. at 3104, 49 L.Ed.2d at 1013–14 (footnote omitted).

16. Justice Marshall was joined by Justices Brennan and Stewart. Justice White, in a separate statement, dissented from the judgment of the Court and noted he agreed with most of Justice Marshall's analysis.

17. *South Dakota v. Opperman,* 428 U.S. 364, 388, 96 S.Ct. 3092, 3106, 49 L.Ed.2d 1000, 1016 (1976) (citations omitted).

18. *Id.* at 392, n.12, 96 S.Ct. at 3108, 49 L.Ed.2d at 1019.

19. *Id.* at 393, 394, 96 S.Ct. at 3109, 49 L.Ed.2d at 1019, 1020.

In addition to its reliance on *Opperman,* the state cites several federal court decisions which have upheld "routine inventory searches on facts comparable to the case at bar." *See United States v. Mitchell,* 458 F.2d 960 (9th Cir. 1972); *United States v. Pennington,* 441 F.2d 249 (5th Cir. 1971), *cert. denied,* 404 U.S. 854, 92 S.Ct. 97, 30 L.Ed.2d 94 (1971); *United States*

upon police impoundment. In his view, "if the owner of the vehicle is in police custody or otherwise in communication with the police, his consent to the inventory is prerequisite to an inventory search."[18] In the absence of explicit consent, Justice Marshall would require that:

[T]here must be specific cause to believe that a search of the scope to be undertaken is necessary in order to preserve the integrity of particular valuable property threatened by the impoundment, [and that] . . . even where a search might be appropriate, such an intrusion may only follow the exhaustion and failure of reasonable efforts under the circumstances to identify and reach the owner of the property in order to facilitate alternative means of security or to obtain his consent to search.[19]

*v. Lipscomb,* 435 F.2d 795 (5th Cir. 1970), *cert. denied,* 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); *United States v. Fuller,* 277 F.Supp. 97 (D.D.C.1967), *sentence vacated and remanded,* 139 U.S.App.D.C. 375, 433 F.2d 533 (1970).

The state also places particular emphasis on the United States Supreme Court's opinion in *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1976). There the defendant was convicted in a state prosecution of the offense of selling heroin to a police informant. His conviction rested, in part, upon the introduction into evidence of a piece of brown paper found in the glove compartment of his car, which was searched without a warrant one week after his arrest and the impoundment of his vehicle. Under the applicable state statute, any vehicle used in facilitating the sale or possession of narcotics was "to be held as evidence until a forfeiture has been declared or a release ordered." The Supreme Court stated:

> But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. . . . While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' the reason for and nature of the custody may constitutionally justify the search. . . . Here the officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. . . . It would be unreasonable to hold that the

We note that upon remand to the Supreme Court of South Dakota that court held the search was unconstitutional under South Dakota's constitution. The Supreme Court of South Dakota observed:

> There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution.[20]

The Court then held that:

> [A] determination of reasonableness requires a balancing of the need for a search in a particular case against the scope of the particular intrusion.
>
> . . . We now conclude that as a matter of protection under S.D.Const., Art. VI, § 11, 'minimal interference' with a citizen's constitutional rights means that noninvestigative police inventory searches of automobiles without a warrant must be restricted to safeguarding those articles which are within plain view of the officer's vision.[21]

In his brief before this court, Daniel first seeks to distinguish *Opperman* on the ground that in *Opperman* the identity of the owner was unknown at the time the vehicle was removed for illegal parking, and the "searching officer found the contraband in the unlocked glove compartment where registration or other evidence of ownership would likely be found".[22] As we analyze respondent's brief, primary emphasis is placed upon the Supreme Court of California's decision in *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971).[23] In *Mozzetti*, the police removed a car which had been involved in an accident and was blocking the roadway. In accordance with standard police procedures, the contents of the car were inventoried. In the course of the inventory, the police discovered a small suitcase on the back seat of the car. The suitcase was closed but unlocked. Upon opening it, an officer discovered a plastic bag containing marijuana. The defendant, who had been rushed to the hospital following the accident, sought a writ of mandamus from the Supreme Court of California requiring the suppression of the evidence obtained during the inventory on the ground that the inventory was a warrantless search of her automobile in violation of the Fourth Amendment. The state first sought to distinguish between an inventory and a search on the ground that a routine inventory upon impoundment is not a search as that term is used in the constitutional sense and that, therefore, the procedures are not subject to the requirements of the Fourth Amendment. The court stated:

---

police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.'
*Id.* at 61–62, 87 S.Ct. at 791, 17 L.Ed.2d at 733–34 (citations omitted).

In regard to the state's reliance on *Cooper*, we deem it sufficient to note our agreement with the position taken in Note, *Warrantless Searches and Seizures of Automobiles*, 87 Harv.L.Rev. 835, 848 (1974), where it is stated:

Even if it be accepted that the possessory interest acquired by the police under a forfeiture statute allows a warrantless search, it is clear that the most expansive reading of *Cooper* cannot extend its rationale to cases where the police do not have a right to deny possession to the car's owner. (footnote omitted)

**20.** *State v. Opperman*, 247 N.W.2d 673, 674 (S.D.1976) (citations omitted).

**21.** *Id.* at 675 (citation omitted).

**22.** Respondent further states that "[i]t is important to observe, however, that the court [in *Opperman* ] did not consider whether the police might open a locked glove compartment or other container inside the car."

**23.** It should be noted that *Mozzetti* was decided five years prior to the United States Supreme Court's opinion in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

Daniel also refers to this court's decision in *Daygee v. State*, 514 P.2d 1159 (Alaska 1973). In this regard respondent states: "Clearly, under *Daygee*, the search could not be upheld for while it may have been substantially contemporaneous with the arrest there was no plain view seizure of the items in the vehicle."

It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private.property of an individual. In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions.[24]

The state argued in *Mozzetti* that the search was reasonable. The California Supreme Court rejected this argument and held that rolling up the vehicle's windows, locking the doors and returning the keys to the owner would be sufficient to protect the property, since that was all the owner could do. The court further observed that the police were free to note any personal property in plain sight within the car. The primary concern of the court was with the reasonableness of the search *into* the closed suitcase. After evaluating the applicable California law, the *Mozzetti* court concluded

that since they were involuntary bailees, the police had only a "slight" duty of care with respect to the contents of the vehicle and that such a duty could easily be met without extensive inventorying.[25]

In *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Chief Justice Burger, writing for a majority of the court, held that evidence gained by opening a locked footlocker, which was removed from the trunk of a vehicle without a warrant, should be suppressed.[26] In so holding, Chief Justice Burger wrote:

> By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause.

. . . . .

> The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a

---

**24.** *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 416, 484 P.2d 84, 88 (1971). The rationale of *Mozzetti* has been followed in *State v. Gwinn*, 301 A.2d 291 (Del.1972); *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975); *State v. Keller*, 265 Or. 622, 510 P.2d 568 (1973).

**25.** *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 417–419, 484 P.2d 84, 89–91 (1971). *See also* 9 S. Williston, Law of Contracts § 1038A, at 905–07 (3rd ed. 1967 and Supp.1978).

**26.** In *Chadwick*, the footlocker was seized by federal agents from the open trunk of a parked vehicle during the arrest of Chadwick and his associates. The opinion notes:

> The footlocker and luggage were placed in the federal building, where, as one of the agents later testified, 'there was no risk that whatever was contained in the footlocker

trunk would be removed by the defendants or their associates.' The agents had no reason to believe that the footlocker contained explosives or other inherently dangerous items, or that it contained evidence which would lose its value unless the footlocker were opened at once. Facilities were readily available in which the footlocker could have been stored securely; it is not contended that there was any exigency calling for an immediate search.

> At the federal building an hour and a half after the arrests, the agents opened the footlocker and luggage. They did not obtain respondents' consent; they did not secure a search warrant. The footlocker was locked with a padlock and a regular trunk lock. *United States v. Chadwick*, 433 U.S. 1, 4–5, 97 S.Ct. 2476, 2480, 53 L.Ed.2d 538, 544 (1977).

repository of personal effects. In sum, a person's expectations. of privacy in personal luggage are substantially greater than in an automobile.[27]

In *Woods & Rohde, Inc. v. State, Dep't of Labor*, 565 P.2d 138 (Alaska 1977), this court alluded to the fact that article I, section 14 of the Alaska Constitution contains an even broader guarantee against unreasonable searches and seizures than is found in its federal counterpart.[28] We stated that:

> Any doubts as to whether privacy interests in business or commercial premises were intended to be encompassed within the protections of this guarantee were laid to rest when our Founding Fathers chose to add the phrase 'and other property' to Alaska's constitutional guarantee against unreasonable searches and seizures. Our conclusion that the Alaska constitutional guarantee appertains to commercial or business premises is also bottomed on the amendment to our constitution found in article I, section 22 and expounded upon in *Ravin v. State*, 537 P.2d 494, 501 (Alaska 1975). We think it

clear from both section 22 and our decisional law that the right of privacy guaranteed to Alaskan citizens is broader in scope than that guaranteed in the federal constitution.[29]

In interpreting article I, section 14 of the Alaska Constitution, we have repeatedly stated that "a search without a warrant is per se unreasonable unless it clearly falls within one of the narrowly defined exceptions to the warrant requirement." [30]

These broad constitutional principles in turn lead to the conclusion that article I, section 14 of the Alaska Constitution affords protection to any closed luggage, briefcases, containers, or packages within a vehicle which is subjected to an inventory search.[31] In short, we embrace the observation that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." [32] We think that protection of the interiors of closed luggage, briefcases, containers and packages transported in a vehicle reflects fundamental expectations of privacy which Alaska society would recognize as reasonable.[33]

---

**27.** *Id.* at 11–13, 97 S.Ct. at 2483, 53 L.Ed.2d at 548–49.

**28.** For the text of article I, section 14 of the Alaska Constitution, *see* note 9, *supra*.

**29.** *Woods & Rohde, Inc. v. State, Dep't of Labor*, 565 P.2d 138, 150 (Alaska 1977).

**30.** *Erickson v. State*, 507 P.2d 508, 514 (Alaska 1973) (footnote omitted). *Accord, Woods & Rohde, Inc. v. State, Dep't of Labor*, 565 P.2d 138, 149 (Alaska 1977); *McCoy v. State*, 491 P.2d 127, 132 (Alaska 1971); *Bargas v. State*, 489 P.2d 130, 132 (Alaska .1971); *Ferguson v. State*, 488 P.2d 1032, 1037 (Alaska 1971); *Rubey v. City of Fairbanks*, 456 P.2d 470, 474 (Alaska 1969); *Sleziak v. State*, 454 P.2d 252, 256 (Alaska 1969), *cert. denied*, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969).

*See also McCoy v. State*, 491 P.2d 127, 132 (Alaska 1971) (footnote omitted), where we noted that the Supreme Court of the United States has held that:

> [T]he principle of antecedent justification is so central to the Fourth Amendment that subject only to a few specifically established and well-delineated exceptions 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.'

Quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (footnotes omitted).

**31.** *See State v. Opperman*, 247 N.W.2d 673 (S.D.1976); *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971). *See also United States v. Chadwick* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

**32.** *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971).

**33.** In *Smith v. State*, 510 P.2d 793 (Alaska 1973), this court adopted Justice Harlan's twofold test for determination of the applicability of Fourth Amendment protections. The test we embraced requires "first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Id.* at 797, *quoting* Justice Harlan's concurring opinion in *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–517, 19 L.Ed.2d 576, 587–88 (1967). *See also Zehrung v. State*, 569 P.2d 189 (Alaska 1977).

We note that the record establishes that Daniel exhibited an actual expectation of privacy concerning the contents of his briefcase.

▆ Conceptually, we reached the foregoing conclusions after analyzing whether, in the instant case, the police inventory procedures constituted a search and, if a search, whether the search was reasonable in light of the guarantees flowing from article I, section 14 of the Alaska Constitution. It is our conclusion that routine police inventorying of the contents of a vehicle is a search within the intendment of Alaska's constitution. It would constitute a highly technical and unwarranted reading of article I, section 14 to construe "search" as not encompassing a police inventory of the contents of a motor vehicle.[34] The fact that the inventory is undertaken in whole or in part for the benevolent purpose of protecting the property of the driver of the vehicle does not change the activity into something other than a search. What is determinative is that the conducting of an inventory is a governmental intrusion upon an individual's privacy. To characterize such an invasion of privacy of the vehicle owner as other than a search would erode the constitutional rights implicated.

▆ This leads to the question whether the instant warrantless inventory search was reasonable. Previously we alluded to our consistent holdings that "a search without a warrant is per se unreasonable unless it clearly falls within one of the narrowly defined exceptions to the warrant requirement."[35] We also noted earlier that the inventory search here was a purely routine noninvestigative police inventory search since the state advanced no claim that the carrying out of the inventory of the vehicle's contents should be justified on the basis of any established exception to the warrant requirement. Nevertheless, we have concluded that there are rationales supporting a routine noninvestigative warrantless inventory search of a vehicle and its contents which pass constitutional muster. Specifically, we refer to the need to protect property located within Daniel's vehicle at the time it was impounded.[36] Given this valid policy reason for inventory searches, we hold that in conjunction with impounding a vehicle, the police, as a matter of routine inventory procedure, are entitled to catalog all articles which are not in closed or sealed containers, luggage, briefcases, and packages.[37] We believe that inventory procedures thus limited constitute only minimal intrusions upon an owner's reasonable expectation of privacy and are thus constitutionally permissible in light of the rationales underlying police inventory searches of impounded vehicles and Alaska's constitutional guarantee against unreasonable searches and seizures.[38] Unlike the state, we are unable to perceive any principled distinction between unlocked and locked containers. The distinction the state attempted to draw at oral argument ignores the common reality that some persons may not own luggage with locks and that others expect that closed containers will adequately conceal what they regard as private.

Consequently, we hold that a warrantless inventory search of closed, locked or sealed luggage, containers, or packages contained within a vehicle is unreasonable and thus an unconstitutional search under the Alaska

---

**34.** *See State v. Opperman,* 247 N.W.2d 673 (S.D.1976); *Mozzetti v. Superior Court,* 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971).

**35.** *Erickson v. State,* 507 P.2d 508, 514 (Alaska 1973) (footnote omitted). *See* cases collected in note 30, *supra.*

**36.** As noted before, no claim is made by the state that an inventory was necessary to protect the police from potential danger. Thus, this rationale has no applicability to the particular facts of this case. Further, we are not persuaded that an inventory search would prevent unfounded claims of lost or stolen property against the police.

**37.** As to any closed or sealed containers found within a larger open or unsealed container, the officer conducting the inventory should list the items as sealed or locked packages or containers.

**38.** *See United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973); *State v. Opperman,* 247 N.W.2d 673 (1976).

Constitution.[39] We believe this holding is in accordance with the purpose of article I, section 14 of the Alaska Constitution and the persuasive authority of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), as well as our previous decisions which have interpreted this constitutional provision.[40] As to any closed, sealed or locked containers, we hold that it is sufficient, for routine inventory purposes, that the officer merely list the item as a closed or locked footlocker, briefcase, package, or container and, if deemed necessary remove the same for safekeeping.[41]

Given the foregoing, we conclude that the superior court correctly granted Daniel's motion to suppress all evidence which was observed after the officer lifted the lid of Daniel's briefcase. Here the briefcase in which the illegal items were discovered was lying unlocked on the back seat of Daniel's vehicle. Since the briefcase was closed, the officer was not authorized to open it for the purpose of inventorying its contents.

For the foregoing reasons, the superior court's suppression order is Affirmed.

BURKE, Justice, concurring.

Unlike the majority, I think there is merit to the argument that inventory searches, under circumstances such as those present in this case, are necessary to protect the police against false claims. That such

**39.** *Woods & Rohde, Inc. v. State, Dep't of Labor*, 565 P.2d 138 (Alaska 1977); *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971); *People v. Counterman*, 556 P.2d 481 (Colo.1976); *State v. Opperman*, 247 N.W.2d 673 (S.D.1976).

See also *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In *Barlow's, Inc.*, the United States Supreme Court held unconstitutional a statute which authorized routine, warrantless inspections of business premises by agents of the Secretary of Labor under the direction of the Occupational Health & Safety Act of 1970.

**40.** *See Daygee v. State*, 514 P.2d 1159, 1166 (Alaska 1973), where we stated, in connection with a search incident to arrest, that "[t]he search referred to above, however, would only go to visible areas within easy reach of the suspect and would not permit the opening of closed spaces or the opening of closed containers." Further, in *McCoy v. State*, 491 P.2d 127, 138 (Alaska 1971), we set forth the requirements of a warrantless search incident to an arrest as follows:

> Adequate protection for the arrestee's legitimate interests in privacy, however, will be provided by the following restrictions on warrantless incidental searches of the persons: (1) The arrest must be valid—probable cause for the arrest must exist or the search is unconstitutional. (2) The search must be roughly contemporaneous with the arrest . . . . (3) The arrest must not be a pretext for the search; a search incident to a sham arrest is not valid. . . . (4) Finally, the arrest must be for a crime, evidence of which could be concealed on a person. [footnotes omitted] [citations omitted]

In *Zehrung v. State*, 569 P.2d 189 (Alaska 1977), the state asked this court to abandon the fourth requirement of *McCoy* in light of the decision in *United States v. Robinson*, 414 U.S. 218, 38 L.Ed.2d 427 (1973). We declined the invitation holding, in part, that:

> [A]bsent specific articulable facts justifying the intrusion, which are not present here, a warrantless search incident to an arrest, other than for weapons, is unreasonable and therefore violative of the Alaska Constitution if the charge on which the arrest is made is not one, evidence of which could be concealed on the person.

*Zehrung v. State*, 569 P.2d 189, 199-200 (Alaska 1977) (footnote omitted).

**41.** In the event circumstances permit, the driver or owner of the vehicle should be consulted and offered the opportunity to request that an inventory be made of the contents of any closed or locked containers.

Decisions which conclude that there is only a minimal duty of care insufficient to support inventory searches include: *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971); *State v. Sawyer*, 571 P.2d 1131 (Mont.1977); *State v. Opperman*, 247 N.W.2d 673 (S.D.1976).

Protection can also be achieved in the manner approved by the Supreme Court of California. In *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 417, 484 P.2d 84, 89 (1971), the court observed:

> [I]tems of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property.

See also *State v. Sawyer*, 571 P.2d 1131 (Mont. 1977); *State v. Opperman*, 247 N.W.2d 673 (S.D.1976).

claims are not mere figments of police imagination is amply demonstrated by the facts in *Gottschalk v. State*, 575 P.2d 289 (Alaska 1978). Unless someone is able to testify from personal observation that a container did or did not contain a specific item when seized, the police will be seriously hampered in their ability to defend against a charge that the item was removed from the container while it was in police custody. Testimony that the container itself was stored securely is no substitute for testimony that the "missing" item was never in it in the first place.

Nevertheless, I believe that the holding of the United States Supreme Court in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), requires us to affirm the suppression order in this case. Like the majority, I am unable to perceive any principled distinction between locked containers and those that are unlocked but closed. Thus, I concur.