NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter. Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| KYLE ADRIAN ROGERS, | Court of Appeals No. A-11071 |
| Appellant, | Trial Court No. 3AN-07-4598 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2465 — July 31, 2015 |

Appeal from the Superior Court, Third Judicial District,
Anchorage, Peter G. Ashman, Judge.

Appearances: Hannah E. King, Assistant Public Defender, and
Quinlan Steiner, Public Defender, Anchorage, for the Appellant.
Diane L. Wendlandt, Assistant Attorney General, Office of
Special Prosecutions and Appeals, Anchorage, and Michael C.
Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley,
District Court Judge.[*]

Judge HANLEY.

An Anchorage police officer observed Kyle Adrian Rogers commit a traffic
violation, and the officer conducted a traffic stop. During this stop, the officer

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska
Constitution and Administrative Rule 24(d).

determined that Rogers' driver's license was suspended and that he was not insured. A second officer arrived on the scene and concluded that, due to these two offenses, Rogers' car would be impounded. This second officer then searched Rogers' vehicle without a warrant and discovered cocaine. Based on this discovery, Rogers was convicted of fourth-degree misconduct involving a controlled substance.

Superior Court Judge Peter G. Ashman upheld the warrantless search of Rogers' vehicle under the theory that it was a valid inventory search. For the reasons explained in this opinion, we conclude that the search of Rogers' car was not a valid inventory search, and we therefore reverse his conviction.

*Facts and proceedings*

On April 28, 2007, Anchorage Police Officer John Goetz saw a car violate the Anchorage municipal traffic code by changing lanes while turning from one street onto another, so he conducted a traffic stop. Rogers was driving the car, but he was unable to produce a driver's license or proof of insurance. Goetz returned to his patrol car to check the status of Rogers' license and insurance.

In the meantime, a second officer, William Geiger, arrived on the scene. He observed Rogers, who was sitting in the driver's seat, moving his hands toward the center console and passenger side of the car.

While Geiger was observing Rogers, Officer Goetz confirmed that Rogers' driver's license was suspended and that he had no insurance. Goetz had Rogers get out of his vehicle, and he temporarily detained Rogers in the back of his patrol car.

After Goetz escorted Rogers to his patrol car, Geiger began searching Rogers' vehicle. Geiger further testified that it was his practice, every time a driver was found to be unlicensed or uninsured, to impound the vehicle. Geiger assumed that

Rogers' car would be impounded, and he decided to get a "jumpstart" on what he characterized as an inventory search of the car.

Geiger testified that when he first entered the car, he looked into the "lunge, reach, and grasp" area surrounding the driver's seat, but he did not see "anything of interest." Geiger then focused on the center console and saw that it was partially open. When Geiger looked inside the console, he discovered cocaine.

At this point Geiger stopped searching the car and secured it for impoundment and transport to storage, where it would be held while he applied for a search warrant.

In the meantime, Goetz had decided not to take Rogers to jail. Instead, he issued Rogers a citation for driving with a suspended license and then he released him.

Four days after Rogers' car was impounded, Goetz obtained a search warrant, but no additional drugs were discovered during the ensuing search.

Based on Rogers' driving with a suspended license and his possession of cocaine, the State charged him with driving with a suspended license and misconduct involving a controlled substance in the fourth degree. Rogers filed a motion seeking suppression of the evidence asserting that the initial warrantless search of his vehicle was illegal. Following an evidentiary hearing, the superior court denied this motion. The court ruled that the initial search of Rogers' car was a valid inventory search incident to the impoundment of the car.

Rogers pleaded guilty to driving with a suspended license, and a jury subsequently convicted him of the drug offense. He appeals.

*The State did not meet its burden to establish that the warrantless search of the vehicle clearly fell within the inventory exception to the warrant requirement*

It is undisputed that Officer Geiger searched Rogers' car without a search warrant. The State argues that Geiger's warrantless search of the vehicle was valid because Anchorage Municipal Code 09.28.026 authorized the impoundment of Rogers' vehicle because Rogers was driving without a license and without insurance. According to the State, the police were thus authorized to inventory the contents of the car before it was impounded.

In *State v. Daniel*,[1] the Alaska Supreme Court recognized inventory searches as a valid exception to the warrant requirement. *Daniel* holds that when the police impound a vehicle, they may conduct an inventory to catalog all articles of value in the vehicle, provided that they do not open sealed or otherwise closed containers.[2]

Vehicle inventory searches serve to protect the owner's property while it is in police custody, to protect the police against claims that they lost or stole the property, and to protect the police from potentially dangerous articles.[3] But the United States Supreme Court has declared that inventory searches must be limited to these functions:

> [A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory

---

[1] *State v. Daniel*, 589 P.2d 408 (Alaska 1979).

[2] *Id*. at 417.

[3] *D'Antorio v. State*, 926 P.2d 1158, 1162 (Alaska 1996) (citing *South Dakota v. Opperman*, 428 U.S. 364, 370 (1976)).

searches are turned into "a purposeful and general means of discovering evidence of crime[.]"[4]

As Professor LaFave observes in his treatise on search and seizure, courts have taken steps to prevent inventory searches from evolving into searches for evidence by requiring that all inventories be conducted pursuant to "a regularized set of procedures which adequately guard against arbitrariness."[5] The government must show that the police were acting pursuant to "an established reasonable procedure for safeguarding impounded vehicles and their contents," and that the challenged search "was essentially in conformance with that procedure."[6] Thus, for instance, both state and federal courts have invalidated purported inventory searches in cases where the government failed to show that "standard inventory forms were completed [by the police] and kept for future reference" to memorialize the results of the search.[7]

In the present case, the superior court acknowledged that the Anchorage municipal traffic code authorized the police to impound Rogers' car after they determined that he was driving while his license was suspended. But the court was troubled by several aspects of Geiger's purported inventory search of the vehicle.

The court noted that Geiger's own description of the search tended to show that Geiger was more interested in finding evidence than he was in cataloguing valuables. The court also noted that the State never produced an inventory report, even though the court gave the State ten days to locate and produce such a report.

---

[4] *Florida v. Wells*, 495 U.S. 1, 4 (1990) (quoting *Colorado v. Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring)).

[5] 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* 848 (5th ed. 2012).

[6] *Id*. at 852.

[7] *Id*. at n.3.

Nevertheless, the superior court concluded that there was insufficient evidence to support a finding that Geiger's search was "purely pretextual," so the court upheld the search as a valid inventory search.

This was the wrong legal test. It was not Rogers' burden to prove that Geiger's warrantless search of his vehicle was purely pretextual. Rather, it was the State's burden to establish that Geiger was not searching for evidence, but was instead conducting an inventory search pursuant to established, regularized procedures.

Even viewing the record in the light most favorable to upholding the superior court's ruling, the State failed to establish that Geiger's initial search of Rogers' vehicle met this test.

As the superior court noted, Geiger himself described his actions as a search for "items" of interest. Geiger initially focused on the "lunge, reach, and grasp" area of the car — *i.e.*, places in the vehicle where Rogers might have hidden evidence while maintaining his position behind the wheel. Geiger then turned his attention to the center console because he observed Rogers placing his hands there. These actions, and these justifications, suggest a search for evidence, not a cataloguing of valuables.

(Geiger might potentially have been searching for weapons, but in that event his search was illegal — because, at the time of the search, Officer Goetz had already removed Rogers from the vehicle and had placed him in the back seat of his patrol car.[8])

More significant, and more telling, is the fact that Geiger did not follow regularized procedures when he conducted this search.

Anchorage Municipal Code 24.80.020.F provides that when the police impound a vehicle and conduct an inventory of its contents, "[the] inventory will be

---

[8] *See Arizona v. Gant*, 556 U.S. 332 (2009).

made ... in the presence of a witness." There was no witness to Geiger's actions. The only other officer on the scene, Officer Goetz, was in his patrol car with Rogers.

Further, the Anchorage Municipal Code requires that when an officer conducts an inventory of a vehicle, the officer must create a written list describing the results of the inventory. This inventory list must be signed by both the officer and the witness, and it must be produced in duplicate. The original must be kept on record at police headquarters, and the copy must be placed in the vehicle.[9]

Geiger testified that he did not complete an inventory list in this case because he terminated his search after finding the cocaine, and because he assumed that the inventory list would be "taken care of" later, after he secured a search warrant, because whoever served the search warrant would be required to return the warrant to a judicial officer.

The fact that Geiger stopped searching Rogers' vehicle after he found the cocaine is a further indication that Geiger did not enter the vehicle to inventory whatever valuables might be inside it, but rather to search for evidence of criminality. And Geiger was wrong when he asserted that returning the search warrant to a judicial officer would serve the function of the inventory list required under municipal law.

A search warrant does not authorize the police to search for any and all items of value. Rather, it authorizes them to search for evidence of a crime. Thus, when an officer returns a warrant to the court with a written inventory of property taken during the search, it will not list all items of value found within the described premises. Rather, the inventory will only list items that the police have reason to believe are evidence of a crime — because those are the only items that the police are permitted to seize.

As we explained earlier, it was the State's burden to demonstrate that Geiger's warrantless search of Rogers' vehicle was an inventory search conducted under

---

[9]    *See* Anchorage Municipal Code 24.80.020.F.

established, regularized procedures. The record in this case, even when viewed in the light most favorable to upholding the superior court's ruling, does not establish that Geiger conducted his search of the vehicle in accordance with the municipality's prescribed procedures. Rather, Geiger repeatedly deviated from those procedures. The State therefore failed to overcome the presumption that the warrantless search of Rogers' car was unconstitutional, and the superior court should have granted Rogers' suppression motion.

The cocaine seized from Rogers' vehicle during this unlawful search was the primary evidence supporting his drug conviction. Accordingly, we reverse that conviction.

Given our resolution of this issue, we need not resolve Rogers' claim that he was subjected to an illegal traffic stop, nor do we need to resolve Rogers' constitutional challenge to the Anchorage vehicle impoundment ordinance.

*Conclusion*

The judgment of the superior court is REVERSED.