170 N.J. Super. 211 (1979)
406 A.2d 198
STATE OF NEW JERSEY, PLAINTIFF,
v.
BRIAN BARRETT, KEITH BARRETT, KATHLEEN BARRETT, AND DENNIS P. KEATING, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
July 5, 1979.
*212 Mr. Anthony M. Sellitto, Jr. for defendants Brian and Kathleen Barrett.
Mr. Douglas T. Mundy for defendant Keith Barrett.
Mr. James J. Pierce for defendant Dennis P. Keating.
Mr. Robert W. Scott, II for the State (Mr. Edward J. Turnbach, Prosecutor of Ocean County, attorney).
ADDISON, J.S.C.
Defendants move to suppress approximately 266 grams of marijuana seized in an automobile on November 9, 1978 in the parking lot of the Olde Time Tavern, Route 166, Dover Township, New Jersey. On the evening in question Officer Robert Hardie of the Dover Township Police Department was observing the rear parking lot of the restaurant because of complaints of breakings and enterings of automobiles of patrons. At about 9:40 p.m. he saw two vehicles, a Chevrolet van and a Chevrolet Travelall enter the parking lot and stop near each other. He observed one defendant, Keith Barrett, appear to search the rear of the van and then walk over and enter the Travelall where the other three defendants were seated.
The Travelall then proceeded north and west to a remote area of the parking lot with little lighting. Sometime during its progress the driver, Dennis Keating, turned off its lights.
*213 Officer Hardie called for his backup, Patrolman Baumeister, who picked him up in his unmarked car and proceeded to the area where the defendants were stopped. On approaching, Baumeister turned his spotlight on the vehicle, revealing the occupants. Hardie testified that at that point he observed an empty hand reach from the front seat to the back. Patrolman Baumeister stated he did not see this movement. In any event, Hardie proceeded to the driver's side of the Travelall and asked all four individuals for identification. The three Barretts  Keith, Kathleen and Brian  immediately produced theirs. Keating, the driver, had trouble finding his driver's license, eventually produced it, but failed to produce registration for the vehicle. Keating stated the vehicle belonged to a relative and that person had the registration. Hardie testified that Keating appeared nervous when asked for identification.
When Keating could not produce the registration the policemen requested all defendants to exit the vehicle and they complied. The police then conducted a search of the vehicle for the missing registration and for what they termed a protective search for their own safety. This led them beneath the back bench of the Travelall where they found a large brown bag. Hardie then pulled it from under the seat and looked inside, observing marijuana. Defendants were placed under arrest for possession of C.D.S., given the Miranda warnings and taken to police headquarters.

I
At the outset the court is confronted with the prosecutor's argument that the passengers (the three Barretts) have no standing to challenge the search. This argument is based on the recent United States Supreme Court decision in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and its first reported offspring in this jurisdiction, State v. List, 166 N.J. Super. 368 (Law Div. 1979). The prosecutor takes the position that under these two cases the only person who can challenge the *214 search is the driver and/or owner of the searched vehicle, for only they would have a possessory interest in the vehicle and therefore a justifiable expectation of privacy therein.
The court agrees that if State v. List, supra, were controlling, the prosecutor would be correct in his argument. In List passengers in a searched car were charged with possession of C.D.S. The court, in interpreting Rakas, supra, held that those passengers had no standing to suppress the seized evidence since they had no expectation of privacy in a vehicle they did not own.
That interpretation of Rakas, in this court's opinion, is strained. In Rakas the passengers of the searched vehicle were not charged with possession of the weapon and ammunition seized, a key distinction. These items were to be used as evidence against them in a prosecution for armed robbery, not one for possession. The Supreme Court pointed out that not only did the passengers have no property interest in the vehicle, but they had no property interest in the items seized. Here, defendants are charged with possession of the C.D.S. in question. That is the very nature of the charges against them. The court agrees with defendants that they have Fourth Amendment standing to challenge the search. Rakas has not overturned Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), in this factual context. In Jones the United States Supreme Court held that when one is charged with possession of contraband, seized at someone else's premises, that person has standing to challenge the search and seizure of those premises. This court finds that Jones is still the law in this instance and defendants Barretts have the necessary standing to challenge this search.

II
The prosecutor contends that search was legally conducted both to locate the registration and as a protective measure.
*215 At the outset the court notes that a search to find the registration would be permissible and reasonable if confined to the glove compartment or other area where a registration might normally be kept in a vehicle. Here, there was no testimony whether the Travelall had a console where papers could be held. Certainly there could be no expectation that any indicia of title would be found in the rear of the vehicle. The search should not have gone into that area.
As for the argument that the police conducted a full search of the auto for their own safety, it must fall for two reasons. First, defendants were removed from the vehicle before the search was conducted. If any weapons were in the Travelall, they were not available to defendants once they were outside. A protective search, if one was necessary, should have been confined to their persons. See State v. Welsh, 167 N.J. Super. 233 (App.Div. 1979).
Second, the court does not find that there was a "furtive" movement of the kind noted in State v. Kennedy, 134 N.J. Super. 454 (App.Div. 1975), which would lead a reasonable person to believe he was in danger.
In Kennedy the officer was chasing a car moving at 70 miles an hour. As the car was showing down defendant driver leaned down to his right as if he was doing something on the floor by his side. The driver continued to lean down while moving in the slow lane, then suddenly came up in a very fast manner. Id. at 456-457. The officer in Kennedy also noticed a bulge under the floor not by the driver. The officer testified that experience told him someone leaning down had something to hide. The officer started his search of the car before defendant had exited it. He found bullets in the glove compartment while searching for the registration and then asked defendant to leave the car. Defendant, upon request, showed the patrolman where "the gun" was hidden. Given all those facts, the court was correct in sustaining the seizure of the gun and ammunition.
*216 The testimony in the present case does not rise to such level that the police could reasonably have anticipated danger. One officer testified he observed an empty hand move backward over the front seat. The other officer failed to corroborate. There was some evidence that the defendant occupying the back seat leaned down toward the floor and then raised up. The court feels these movements did not give the officers the right to make a warrantless search of the vehicle. These movements, the operation of the vehicle with lights off from one point of the parking lot to another, and the driver's lack of vehicular registration, in no way sanctioned the warrantless search of the vehicle. Neither policeman testified that he felt himself in any danger during the incident.
For the reasons set forth above, the motions to suppress are granted.