STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MARY
MANGOLD, JAMES ASCUITTO, AND STEPHEN LABIANCA,
DEFENDANTS-RESPONDENTS.

Argued September 11, 1979—Decided May 19, 1980.

576

*Ileana N. Saros*, Deputy Attorney General, argued the cause for the appellant (*John J. Degnan*, Attorney General of New Jersey, attorney).

*Mark D. Sperber*, Assistant Deputy Public Defender, argued the cause for the respondents Mary Mangold and James Ascuitto (*Stanley C. Van Ness*, Public Defender, attorney).

*James M. McGovern, Jr.*, argued the cause for the respondent Stephen La Bianca (*Anschelewitz, Barr, Ansell & Bonello*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

■ This case concerns the propriety of police automobile inventory procedures initiated subsequent to lawful vehicle impoundment. The issue, left unresolved by the recent decisions of this Court in *State v. Slockbower*, 79 *N.J.* 1 (1979), and *State v. Ercolano*, 79 *N.J.* 25 (1979), is whether, in the absence of a search warrant or indicia of criminality, law enforcement officials must afford one an opportunity to remove possessions from the impounded vehicle before conducting an inventory of its contents. We conclude that the contraband discovered in the course of an inventory conducted without first permitting vehicle occupants to utilize available alternative means of safeguarding their property is inadmissible as evidence in a criminal prosecution. Such police conduct amounts to an unreasonable and unwarranted intrusion into the privacy interests of those occupants in contravention of the Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution (1947).

I

At approximately 8:00 p. m. on January 23, 1977 Lieutenant Raymond LaSalle of the Marlboro Township Police was summoned to the scene of a one-vehicle accident on Route 79 in Marlboro Village. Arriving at the accident with two other police officers Lieutenant LaSalle found that a van had apparently skidded on the icy road surface, struck a tree adjacent to the highway and come to rest so as to obstruct the northbound lane of Route 79. After an examination revealed the vehicle to be inoperable, LaSalle, without consulting with the occupants, arranged to have it towed from the scene.

While awaiting the arrival of the towing service the officer attempted to ascertain the identity of the occupants of the van and question them. Defendant LaBianco identified himself as being the owner of the vehicle, but said that he had been riding as a passenger at the time of the accident and that defendant Mangold had been driving.[1] During the course of this conversation LaSalle noted that LaBianca was acting in an "extremely agitated" manner. It appeared to him that LaBianca was under the influence of drugs or alcohol.

After conversing with LaBianca, the lieutenant returned to the van to make certain the ignition was off and to check for gasoline leakage. With the assistance of another officer, he then proceeded to inventory the contents of the van in accordance with the departmental policy of the Marlboro Police. While LaSalle was inspecting the van, defendants LaBianca and Mangold were seated in a police car with one of the investigating officers approximately seventy-five feet away. The defendants were neither consulted before the inventory was undertaken nor asked if there were any valuables in the vehicle which they wished to remove.

---

[1] It was later determined that defendant Asciutto had also been a passenger in the van.

Upon entering the vehicle Lieutenant LaSalle's attention was attracted to a portable television set situated between the driver's seat and the passenger seat. On the floor of the van, near the television, he observed a closed Coleman cooler lying on its side. In righting the cooler the lieutenant determined that it was not empty. When he unlatched and opened the lid, LaSalle discovered the cooler contained several empty spark plug boxes, two eight packs of Rolling Rock beer, and a "large plastic bag containing green vegetable matter." It was determined that the substance in the bag was marijuana and the defendants were arrested. A subsequent search of LaBianca uncovered additional marijuana.

Defendants were indicted for possession of a controlled dangerous substance in violation of *N.J.S.A.* 24:21 20a(4). Defendant LaBianca's motion to suppress the evidence secured through the inventory of the van was granted by the trial judge, who found:

> The alleged inventory in question was unreasonable under all of the circumstances considering the availability of the owners and the failure of the authorities to advise or consult them before proceeding with what was not only a search of the vehicle but also a search of the contents found in it.
>
>     *       \*       \*       \*       \*       \*       \*       \**
>
> Since there was no probable cause for such a search and it cannot be sustained as a proper inventory search because it has not been shown to be reasonable or necessary for the protection of the owner, the authorities or the towing service, the motion to suppress is granted. [156 *N.J.Super.* 382, 388 (Law Div.1978) (citation omitted).] [2]

---

[2]Similar motions were subsequently granted on behalf of co-defendants Mangold and Asciutto. It is unclear on what grounds Mangold and Asciutto had standing to protest the seizures. See *Rakas v. Illinois,* 439 *U.S.* 128, 99 *S.Ct.* 421, 58 *L.Ed.*2d 387 (1979); *State v. List,* 166 *N.J.Super.* 368 (Law Div.1979). *But see State v. Barrett,* 170 *N.J.Super.* 211 (Law Div.1979). However, the State did not raise the issue below nor in this Court and consequently we do not reach it.

On appeal from the suppression order the cases of all three co-defendants were consolidated. In a *per curiam* opinion the Appellate Division affirmed, adding:

> Because of the frequency with which warrantless auto inventory searches are coming into question, we supplement [the trial judge's opinion] by emphasizing that under the existing admitted facts (1) the police had no reason to suspect that defendants had committed any crime or that the Ford van contained any contraband, and (2) LaBianca, the owner of the van, was not under arrest and was fully capable of taking control of his few possessions in the van. We therefore hold that in warrantless auto inventory search cases, where the police have no reason to suspect that criminality is afoot, before the police may inventory the contents of a car when the owner is present, they should give the owner the opportunity of removing his possessions from the car. A failure to give an owner, present at the scene, an opportunity to remove his possessions would be an unwarranted and unreasonable intrusion into defendant's privacy and violative of his constitutional rights. [164 *N.J.Super.* 74, 76 (1978).]

We granted certification, 81 *N.J.* 43 (1979), to review that holding and now affirm.

## II

It must be emphasized at the outset that the State does not contend that the search executed in this case is justifiable upon any ground other than as an inventory search. The record demonstrates that the facts will not support the application of any of the other established exceptions to the Warrant Clause of the Fourth Amendment. Prior to the inventory there was no arrest, *Chimel v. California*, 395 *U.S.* 752, 757, 89 *S.Ct.* 2034, 2036, 23 *L.Ed.2d* 685 (1969), consent, *Bumper v. North Carolina*, 391 *U.S.* 543, 88 *S.Ct.* 1788, 20 *L.Ed.2d* 797 (1968), or probable cause, *Carroll v. United States*, 267 *U.S.* 132, 45 *S.Ct.* 280, 69 *L.Ed.* 543 (1925). Similarly inapplicable are the notions of plain view, *Coolidge v. New Hampshire*, 403 *U.S.* 443, 91 *S.Ct.* 2022, 29 *L.Ed.2d* 564 (1971), and hot pursuit, *Warden v. Hayden*, 387 *U.S.*

294, 87 *S.Ct.* 1642, 18 *L.Ed.*2d 782 (1967). Our inquiry is necessarily confined accordingly.

Warrantless, nonconsensual automobile inventory searches have frequently been the subject of judicial scrutiny by this and other courts. The signal case in the area, *South Dakota v. Opperman*, 428 *U.S.* 364, 96 *S.Ct.* 3092, 49 *L.Ed.*2d 1000 (1976), broadly approved such intrusions when undertaken to secure the contents of automobiles lawfully in police custody. In *Opperman*, an automobile was impounded and towed by the police for parking violations. At the city impoundment lot a police officer observed several items of personal property inside the car. Pursuant to standard police procedure the officer unlocked the vehicle and began to inventory its contents. During that process a plastic bag containing marijuana was found in the unlocked glove compartment of the car.

In upholding the inventory against constitutional challenge the United States Supreme Court determined that the automobile impoundment was sanctioned by the " 'community caretaking functions' " incumbent upon law enforcement officials in situations wherein the public safety and efficient movement of vehicular traffic are jeopardized. *Id.* at 368, 96 *S.Ct.* at 3096, 49 *L.Ed.*2d at 1005 (quoting *Cady v. Dombrowski*, 413 *U.S.* 433, 441, 93 *S.Ct.* 2523, 2528, 37 *L.Ed.*2d 706, 715 (1973)). As to the inventory the Court declared that such intrusions into automobiles legally "impounded or otherwise in lawful police custody" have been widely sustained as reasonable under the Fourth Amendment "where the process is aimed at securing or protecting the car and its contents." *Id.* 428 *U.S.* at 373, 96 *S.Ct.* at 3099, 49 *L.Ed.*2d at 1007 (citing *Cady v. Dombrowski, supra; Harris v. United States*, 390 *U.S.* 234, 88 *S.Ct.* 992, 19 *L.Ed.*2d 1067 (1968); *Cooper v. California*, 386 *U.S.* 58, 87 *S.Ct.* 788, 17 *L.Ed.*2d 730 (1967)). Noting that the inventory procedure was a product of routine police practice, the Court found it served a three-fold purpose: protection of the inventoried property while in police custody, shielding the police and storage bailees from

false property claims, and safeguarding the police from potential danger. 428 *U.S.* at 369, 96 *S.Ct.* at 3097, 49 *L.Ed.*2d at 1005. In holding that such action was constitutionally permissible the Court declared:

> The * * * police were indisputably engaged in a caretaking search of a lawfully impounded automobile. * * * The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car. As in *Cady*, there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive. [*Id.* at 375–76, 96 *S.Ct.* at 3100, 49 *L.Ed.*2d at 1009 (citation and footnote omitted).]

The propriety of the police impoundment inventory procedures has recently been the target of challenge and judicial review in New Jersey. See *State v. Slockbower*, 79 *N.J.* 1 (1979); *State v. Ercolano*, 79 *N.J.* 25 (1979); *State v. McDaniel*, 156 *N.J.Super.* 347 (App.Div.1978). Last term we examined the status of the law relative to automobile impoundment. That assessment, undertaken in *Slockbower* and *Ercolano*, revealed a heightened judicial awareness of the privacy rights of automobile drivers in impoundment cases. See 79 *N.J.* at 8- 15; *id.* at 33–34. In keeping with that concern, the Court subscribed to the view requiring "a factual showing of substantial police need, in the light of the constitutional regard for the privacy interests of automobile drivers, before approving the impoundment of a motor vehicle." *Id.* at 8, 13; see *id.* at 33- 34. The analysis focused on the legitimacy of the purpose underlying the impoundment and reasonableness of that action under the facts, including the availability of viable alternatives to police custody of the vehicle. A balance must be struck between the right to privacy and the requirements of legitimate police safekeeping

functions. See *id.*, 79 *N.J.* at 9. In that regard, Judge Conford, writing for the Court in *Slockbower*, noted that in certain situations where an automobile may be properly subject to impoundment, the police must examine the possibility of utilizing other means of securing the vehicle "rather than impound[ing] it against the will of the driver and thereafter search[ing] it routinely." *Id.*

■ Reading *Slockbower* and *Ercolano* in conjunction with *Opperman*, it is apparent that two levels of inquiry are relevant to determine the propriety of inventory searches. The first determination to be made is whether, under *Slockbower* and *Ercolano*, the impoundment itself is justified. This threshold consideration is of fundamental importance as it is the act of impoundment which generates the necessity for the inventory. Absent the justification of a valid impoundment there can be no inventory. *Slockbower*, 79 *N.J.* at 13; *Ercolano*, 79 *N.J.* at 34.

■ With respect to the second level of inquiry, the legality of the inventory, it must be acknowledged from the first that motor vehicles are identifiable areas of expected privacy (albeit diminished) entitled to the protection traditionally afforded under the Fourth Amendment. *Marshall v. Barlow's Inc.*, 436 *U.S.* 307, 315 *n.* 10, 98 *S.Ct.* 1816, 1822 *n.* 10, 56 *L.Ed.2d* 305, 313 (1978); *Coolidge v. New Hampshire*, 403 *U.S.* 443, 461, 91 *S.Ct.* 2022, 2035, 29 *L.Ed.2d* 564, 580 (1971). Equally clear is the fact that despite their benign purposes, such inventories constitute searches subject to Fourth Amendment strictures. *United States v. Lawson*, 487 *F.2d* 468, 472 (8th Cir. 1973); *Mozzetti v. Superior Court*, 4 *Cal.3d* 699, 705–06, 484 *P.2d* 84, 88, 94 *Cal. Rptr.* 412, 416 (1971); *State v. Goodrich, Minn.*, 256 *N.W.2d* 506, 507 (1977); *State v. Slockbower*, 79 *N.J.* at 12–13; *State v. Ercolano*, 79 *N.J.* at 45–46; Miles & Wefing, "The Automobile Search and the Fourth Amendment: A Troubled Relationship", 5 *Seton Hall L.Rev.* 105, 138 (1972); 87 *Harv.L.Rev.* 835, 850

(1974); see *Terry v. Ohio*, 392 *U.S.* 1, 18 *n.* 15, 88 *S.Ct.* 1868, 1878 *n.* 15, 20 *L.Ed.*2d 889, 903–04 (1968). *Contra, People v. Sullivan*, 29 *N.Y.*2d 69, 272 *N.E.*2d 464, 323 *N.Y.S.*2d 945 (1971). Mere lawful custody of an impounded vehicle does not *ipso facto* dispense with the constitutional requirement of reasonableness mandated in all warrantless search and seizure cases. See *Cooper v. California*, 386 *U.S.* 58, 87 *S.Ct.* 788, 17 *L.Ed.*2d 730 (1967); *Mozzetti, supra; Wagner v. Commonwealth*, 581 *S.W.*2d 352 (Ky.Sup.Ct.1979). Accordingly, it is necessary to determine whether the inventory was a reasonable one under all the circumstances. See *United States v. Chadwick*, 433 *U.S.* 1, 9, 97 *S.Ct.* 2476, 2482, 53 *L.Ed.*2d 538, 547 (1977); *Opperman*, 428 *U.S.* at 372–76, 96 *S.Ct.* at 3098–3101, 49 *L.Ed.*2d at 1007–09.

■ If the police custody of the vehicle is shown to be lawful, then the inventory procedure itself must be scrutinized relative to the reasonableness standards enunciated in *Opperman*. 428 *U.S.* at 375, 96 *S.Ct.* at 3100, 49 *L.Ed.*2d at 1009. It must be demonstrated that the intrusion was in fact an inventory initiated pursuant to the designated objectives set forth in *Opperman*. *Ante* at 581–582. To that end a variety of details are significant. Factors such as the scope of the search, the procedure used, and the availability of less intrusive alternatives are of particular importance. *Id.* at 375–76, 96 *S.Ct.* at 3100–3101, 49 *L.Ed.*2d at 1009. Their presence, or absence, indicate whether the inventory in question was carried out with the intent to foster the protective functions it was designed to promote. See *id.* Such considerations will also weigh heavily in striking a balance between the governmental interest advanced to justify the intrusion and the individual citizen's constitutionally protected privacy interest. See *id.* at 378, 96 *S.Ct.* at 3101, 49 *L.Ed.*2d at 1010 (Powell, J., concurring).

## III

The police impoundment of the defendant's van was lawful and proper. After the accident the van came to rest in a position completely obstructing the northbound lane of Route 79. The vehicle was inoperable. As such it posed a serious threat to public safety.[3] Further, the impoundment and removal of the disabled van was authorized by statute. *N.J.S.A.* 39:4-136. In sum, the action taken was reasonable and necessary under the circumstances, and in accordance with the "community caretaking functions" of the involved law enforcement officials. See *Slockbower, supra,* 79 *N.J.* at 7-12; *Ercolano, supra,* 79 *N.J.* at 33–34. See also *Opperman, supra,* 428 *U.S.* 374 75, 96 *S.Ct.* at 3099–3100, 49 *L.Ed.2d* at 1008; *Cady v. Dombrowski,* 413 *U.S.* 433, 441, 93 *S.Ct.* 2523, 2528, 37 *L.Ed.2d* 706, 714-15 (1973).

We turn now to the inventory. Utilizing the framework of review delineated in *Opperman* an examination of the record reveals that the inventory conducted by the Marlboro Police was in accordance with standard departmental procedure. The van was inventoried after it had been lawfully impounded and was awaiting the arrival of the towing service. Every item of value was accounted for and properly listed on a standard police inventory form. Thus, on this level, it does not appear that the inventory was a subterfuge for a warrantless investigatory search.[4]

Despite the apparent propriety of the routine procedures employed, however, we find the inventory in this case to be

---

[3]Adding to the possible danger was a crowd of approximately fifty-five people who had been attending a meeting at a nearby fire hall and were drawn to the scene by the sound of the crash.

[4]In view of our conclusion here today we do not reach the question of whether the search of the cooler itself was reasonable. But see *United States v. Schleis,* 582 *F.2d* 1166 (8th Cir. 1978); *State v. Daniel,* 589 *P.2d* 408 (Alas.Sup.Ct.1979); *Mooney v. State,* 243 *Ga.* 373, 254 *S.E.2d* 337 (Ga.Sup.Ct. 1979).

fatally flawed by the failure of the police to discuss the disposition of the van's contents with its owner. As noted by the courts below, the defendants were present and physically capable of making arrangements for the safekeeping of their belongings. If in fact the principle justifications for an inventory are to protect the property in the vehicle and to shield the authorities from false claims relating to those items, it would seem only reasonable to consult with the owner or temporary custodian of the vehicle when he is present at the time of the search. As stated by the trial judge:

> The owner may want to remove his property where he can do so easily; he may want to accompany the vehicle and its contents, or he may have other adequate means of safeguarding his property or absolving the authorities and the towing service of responsibility. The reasonableness of invading his privacy must be viewed in light of all the circumstances. [156 *N.J.Super.* at 387.]

The absence of the vehicle owner was an express consideration in the *Opperman* court's assessment of the reasonableness of the inventory in that case. 428 *U.S.* at 375, 96 *S.Ct.* at 3100, 49 *L.Ed.*2d at 1009; *id.* at 384, 96 *S.Ct.* at 3104, 49 *L.Ed.*2d at 1014. It has also been of crucial concern in similar determinations by other courts. *People v. Counterman*, 556 *P.*2d 481, 484–85 (Colo.Sup.Ct.1976); *Wagner v. Commonwealth*, 581 *S.W.*2d 352, 357 (Ky.Sup.Ct.1979); *State v. Jewell*, 338 *So.*2d 633, 639 (La. Sup.Ct.1979); *State v. Peterson*, 583 *S.W.*2d 277, 281–82 (Mo.Ct. App.1979). We believe it to be equally decisive in this case.

The officers involved in the inventory here testified that where possible they normally afford occupants of impounded vehicles an opportunity to remove their personal effects before cataloguing the contents. They claimed, however, that a similar opportunity was not extended to the defendants due to exigent circumstances resulting from the accident and the icy road conditions. We are not persuaded. In questioning the reasona-

bleness of the officers' actions we note that although faced with "emergent" traffic conditions after the accident, none of the officers detailed to the scene found it necessary to attempt to direct that traffic. Likewise do we reject any suggestion that the slick road surface made it too onerous a task to walk 75 feet from the van to where the defendants were seated in a patrol car. Such claims pale against the defendants' interest in the privacy of the contents of the van. The defendants were not under arrest, injured or incapacitated. The items in the van were not many in number nor burdensome in nature. The defendants were fully capable of removing them had they reasonably been given the opportunity to do so. They were not.

In determining the reasonableness of any search a balance must be struck between governmental necessity and individual privacy. Impoundment inventories serve significant and necessary protective functions. Nevertheless, "even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 *U.S.* 479, 488, 81 *S.Ct.* 247, 252, 5 *L.Ed.*2d 231, 237 (1969). The inventory search procedure should be no more intrusive than reasonably necessary to respond to the protective functions which fostered its creation. See *United States v. Edwards*, 577 *F.*2d 883, 893 (5th Cir. 1978 (en banc)). Accordingly, we hold that if a vehicle is lawfully impounded and its owner or permissive user is present, that person must be given the option of either consenting to the inventory or making his own arrangements for the safekeeping of the property contained in the vehicle. Absent consent or alternative security provisions, an inventory may be not undertaken. In such cases the vehicle owner or user will be presumed to have assumed the risk for any claims of property loss or theft arising from the impoundment. This determination is the natural corollary to our decisions in *Slockbower* and *Ercolano*. We

view it as being representative of the judicial commitment to limiting unwarranted governmental infringement, well-intentioned or otherwise, of privacy interests.

Affirmed.

PASHMAN, J., concurring.

I concur in the Court's ruling that the inventory of the motor vehicle's contents was improper. As I recently stated in *State v. Ercolano*, 79 *N.J.* 25, 52 (1979) (Pashman, J., concurring), "an inventory is impermissible unless the driver consents or a 'substantial police need' justifies the search." Neither condition existed here; therefore defendants' convictions may not stand. I am writing separately because I disagree with the majority's conclusion that the inventory was not a pretext to conduct an illegal search. I find it also appropriate to consider whether the search of the Coleman cooler was itself reasonable even assuming probable cause or an otherwise valid inventory search—an issue which the majority declined to discuss. See *ante* at 585 *n.* 4.

I

In what is essentially *dicta* in view of the vacation of defendants' convictions, the Court today asserts that "it does not appear that the inventory was a subterfuge for a warrantless investigatory search." *Ante* at 585. I respectfully disagree. In *South Dakota v. Opperman*, 428 *U.S.* 364, 96 *S.Ct.* 3092, 49 *L.Ed.* 2d 1000 (1976), the Supreme Court identified three factors which can serve to justify an inventory subsequent to lawful impoundment: (1) "the protection of the owner's property while it remains in police custody," (2) "the protection of the police against claims or disputes over lost or stolen property," and (3) "the protection of the police from potential danger." *Id.* at 369, 96 *S.Ct.* at 3097. The majority implicitly and correctly recognizes that because defendant was physically present and capable

of refusing consent to the inventory—thereby assuming the risk of damage or loss to his property—none of the above justifications for an inventory was present. See *ante* at 586; *Ercolanco,* 79 *N.J.* at 53. (Pashman, J., concurring).

I do not perceive how the majority can conclude, however, that the inventory was anything but a pretext to conduct an illegal search. The record clearly reveals the true purpose of the officers' actions. The officers had no conceivable need to conduct the inventory, since the owner did not so consent for the protection of his property. They testified that their usual practice was to allow the occupants of impounded vehicles an opportunity to remove their personal effects. See *ante* at 586. The feeble reasons the officers gave for diverting from their normal procedures support the conclusion that the inventory was merely a subterfuge to conduct an illegal search. When the officer arrived at the scene of the single vehicle accident, he noticed that defendant LaBianca was acting in an "extremely agitated" manner and appeared to be under the influence of drugs or alcohol. *Ante* at 587. These observations, not the desire to protect defendants' property, constituted the genuine motivations for the exploratory—not inventory—search. See *State v. McDaniel,* 156 *N.J.Super.* 347, 359–360 (App.Div.1978).

Even if the police officers had probable cause to search the Coleman cooler, that search would have violated the recent holding of the Supreme Court in *Arkansas v. Sanders,* 442 *U.S.* 753, 99 *S.Ct.* 2586, 61 *L.Ed.*2d 235 (1979). That case held that the warrantless search of luggage taken from an automobile violated the Fourth Amendment notwithstanding the fact that the police had probable cause for believing the luggage contained contraband. *Id.* at 761–763, 99 *S.Ct.* at 2591–2593, 61 *L.Ed.*2d at 243–244. As to other containers seized from automobiles, the Supreme Court noted:

Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. See *Harris v. United States*, 390 *U.S.* 234, 236, 88 *S.Ct.* 992 [993], 19 *L.Ed.*2d 1067 (1968) (per curiam). There will be difficulties in determining which parcels taken from an automobile require a warrant for their search and which do not. *Our decision in this case means only that a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.* [*Id.* at 764, 99 *S.Ct.* at 2593, n. 13, 61 *L.Ed.*2d at 245 n. 13 (emphasis supplied)]

The decision in *Sanders* compels the understanding that for purposes of the Fourth Amendment's Warrant Clause, there is no difference between a beverage cooler taken from an automobile and one seized in other locations.

It is quite obvious that the marijuana contained inside the closed Coleman cooler was not open to "plain view." Nor did the outward appearance of the beverage cooler reveal its function as a container for a cache of drugs. Therefore, regardless of the existence of probable cause, such a warrantless search could not be justified under the "automobile exception." See *United States v. Dien*, 609 *F.*2d 1038 (2d Cir. 1979) (holding that the warrantless search of closed cardboard boxes lawfully removed by police from a van was an improper search under *Arkansas v. Sanders*). In essence, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire*, 403 *U.S.* 443, 461, 91 *S.Ct.* 2022, 2035, 29 *L.Ed.*2d 564 (1971).

## II

Even assuming that the police inventory of the contents of the van was proper—for example, if the driver or owner was not

present and there was a "substantial police need" justifying the inventory—I am of the view that the police should have inventoried the Coleman cooler as a unit. Under the present facts, no legitimate interest in an inventory would have permitted them to open the cooler and itemize its contents.

I fully concur with the majority that "despite their benign purposes * * * inventories constitute searches subject to Fourth Amendment strictures." *Ante* at 583. As the California Supreme Court stated in *Mozzetti v. Superior Court*, 4 *Cal.*3d 699, 484 *P.*2d 84, 88, 94 *Cal.Rptr.* 412, 416 (Sup.Ct.1971):

> It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. Regardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. In that process suitcases, briefcases, sealed packages, purses—anything left open or closed within the vehicle—is subjected without limitation to the prying eyes of authorities. Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions.

An inventory search is a significant intrusion into the legitimate expectations of privacy of an owner or driver of an impounded vehicle. "As part of their inventory search the police may discover materials such as letters or checkbooks that 'touch upon intimate areas of an individual's personal affairs,' and 'reveal much about a person's activities, associations, and beliefs.' " *South Dakota v. Opperman*, 428 *U.S.* at 380 n. 7, 96 *S.Ct.* at 3102 n. 7 (Powell, J., concurring) (quoting *California Bankers Ass'n v. Shultz*, 416 *U.S.* 21, 78–79, 94 *S.Ct.* 1494, 1525–1526, 39 *L.Ed.*2d 812 (1974) (Powell, J., concurring)). In weighing these privacy interests against the governmental inter-

ests in itemizing the contents of luggage, packages or containers found in an impounded vehicle, it is clear that the balance weighs heavily in favor of the individual.

As stated above, the commonly avowed purposes of an inventory search are: (1) the protection of the owner's property while in police custody; (2) protection of police against claims over lost or stolen property; and (3) the protection of the police from physical danger. *South Dakota v. Opperman*, 428 *U.S.* at 369, 96 *S.Ct.* at 3097. In this case, since the Coleman cooler was latched, "and there was no danger of anything slipping out, the first two purposes are better served if the [container] is inventoried as a unit." *United States v. Bloomfield*, 594 *F.*2d 1200, 1202 (8th Cir. 1979).

> In this way the [container], which is locked up as a whole in police headquarters, has never been opened and its contents have never been removed, reshuffled and replaced. To our minds, this would minimize the possibility of loss and the possibility of false claims against police by the owner. [*Id.*]

Given the circumstances under which the Coleman cooler was found, it was not reasonable to believe that storing the cooler at the police station, without knowledge of its contents, would pose a danger to the police. *Id.* at 1203; see also *State v. Pace*, 171 *N.J.Super.* 240, 250 (App.Div.1979). I agree with the majority that "[t]he inventory search procedure should be no more intrusive than reasonably necessary to respond to the protective functions which fostered its creation." *Ante* at 587. In this case, however, none of the three justifications for an inventory search supports a search of the interior of a closed container that was taken from an impounded vehicle. I therefore conclude that the officer's handling of the container was substantially more intrusive than necessary to satisfy the interests which justify an inventory.

In *Mozzetti v. Superior Court, supra,* the California Supreme Court was confronted with a situation highly analogous to the present case. That case involved a warrantless search of an

unlocked suitcase observed by police on the rear seat of a disabled automobile during a routine inventory. In the process of searching the automobile, the police discovered a bag of marijuana in the unlocked suitcase. As in the case before us, the search could not even arguably be justified on any ground other than the inventory of an impounded vehicle. The court in *Mozzetti* acknowledged that the police could validly "take note of any personal property in plain sight within the automobile being taken into custody." 484 *P.*2d at 89, 94 *Cal.Rptr.* at 417. They could not, however, remove the suitcase or search its contents.

> [I]tems of value left in an automobile to be stored by the police may be adequately protected merely by rolling up the windows, locking the vehicle doors and returning the keys to the owner. The owner himself, if required to leave his car temporarily, could do no more to protect his property. [*Id.*]

Where the owner or driver is not present, I believe this would be the proper procedure for police to follow where circumstances indicate that it would afford a reasonable measure of security.

The rule expressed in *Mozzetti* limiting a valid inventory search to "[a]ny objects clearly visible without probing," *id.,* see *Coolidge v. New Hampshire* , 403 *U.S.* at 465–472, 91 *S.Ct.* at 2037–2041, strikes an appropriate balance between the governmental interest in conducting the inventory and the vehicle owner's rights of privacy in his personal effects. See, *e. g., State v. Daniel,* 589 *P.*2d 408 (Alaska Sup.Ct.1979); *State v. Gwinn,* 301 *A.*2d 291 (Del.Sup.Ct.1972); *State v. Boster,* 217 *Kan.* 618, 539 *P.*2d 294 (Sup.Ct.1975); *State v. Keller,* 265 *Or.* 622, 510 *P.*2d 568 (Sup.Ct.1973). I would therefore hold that where there is a "substantial police need" to conduct an inventory of a lawfully impounded vehicle and the owner or driver is not present, the police may not routinely catalog items which are contained in luggage, containers and packages where the items are not in the plain sight of the police officers conducting the inventory. Furthermore, if the owner or driver is present

and consents to an inventory, he may restrict its scope to specified portions of the vehicle, see *Ercolano,* 79 *N.J.* at 53 (Pashman, J., concurring), and may also restrict access to containers found inside the vehicle. The officers' conduct in this case far exceeded these bounds for a reasonable inventory search. I would bar from admission as evidence the fruits of their efforts for this reason, as well as the grounds stated by the majority. Accordingly, I concur in the judgment of the Court.

Justice PASHMAN concurs in result.

*For affirmance* —Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—6.

*For reversal* —None.