STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DANIEL
SPURR, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 9, 1981—Decided April 22, 1981.

Before Judges BISCHOFF, MILMED and FRANCIS.

*Frank D. De Vito,* Assistant Prosecutor, Union County, argued the cause for appellant (*John H. Stamler,* Prosecutor of Union County, attorney; *Edward P. Busichio,* Assistant Prosecutor, of counsel and on the brief).

*Mark D. Sperber,* Assistant Deputy Public Defender, argued the cause for respondent (*Stanley C. Van Ness,* Public Defender, attorney).

PER CURIAM.

Defendant was charged by indictment with unlawful possession of a controlled dangerous substance, *viz.,* methadone (*N.J. S.A.* 24:21–20(a)(1)). He moved for an order suppressing evidence, a bottle of methadone, seized by Union Township police during an inventory of his automobile on Route 22 near Springfield Road in the township in the morning of October 25, 1979.

The essential facts surrounding the seizure may be briefly summarized. Officers Thomas Kramer and Robert Sabattis of the Union Township police,[1] who were at the time patrolling the area in a marked police radio car, stopped the 1964 Chevrolet Impala which defendant was driving westbound on Route 22 because it "had an expired inspection sticker on the windshield." A registration check revealed that "the registration on the vehicle was suspended." Defendant was the sole occupant of the vehicle. A check of his driver's license revealed that it, too, had expired. Officer Kramer testified that since defendant's

---

[1]The only two witnesses at the hearing on the motion to suppress.

car had stopped in the single lane "access" road from Route 22 to Springfield Road and was "blocking off Springfield Road completely," and

> Due to the heavy roadway conditions, heavy traffic conditions and the hazardous location of the vehicle and the amount of time it would take for the driver to get his own wrecking service there, towing service, I requested the police towing to immediately remove the vehicle to prevent accidents and the traffic congestion at that location.[2]

Kramer informed defendant that his car was going to be towed and then "looked from outside the vehicle to see if" there was any "physical property that [might] be of value laying in the vehicle." He "observed a small bottle laying ... on the floor in front of the driver's ... seat." The bottle was about one-third full and contained a "[p]inkish" liquid. Based upon his training at the State Police Narcotics School and his experience with prisoners who were "on a Methadone program" when arrested, Kramer believed that the contents of the bottle "probably was Methadone." He thereupon "started an inventory of the vehicle to prepare for the tow truck." Defendant had not been asked "if he wished to remove any items from his car." On "further examination of the bottle" which was found in the car, defendant was placed under arrest.

The trial judge granted the motion to suppress, reasoning that since defendant was not under arrest before the police inventory search procedure had begun, he "should have been given the opportunity, either to take his personal property out or accompany the car, give him a summons and accompany the car while it was going to be impounded." In arriving at this conclusion, the judge appears to have placed substantial reliance upon the holding in *State v. Mangold*, 82 *N.J.* 575, 587 (1980), that

> ... if a vehicle is lawfully impounded and its owner or permissive user is present, that person must be given the option of either consenting to the inventory or making his own arrangements for the safekeeping of the property

---

[2]The police tow truck arrived at the scene "in a matter of a minute or two."

contained in the vehicle. Absent consent or alternative security provisions, an inventory may not be undertaken . . . .

We granted the State's motion for leave to appeal.

■ We reverse. It is clear to us that the impoundment of defendant's vehicle was at the time entirely proper. Here, the car was blocking access to the only exit lane from Route 22 westbound to Springfield Road. The position of the vehicle was creating a hazard for other drivers and impeding traffic. Immediate action was necessary in order to protect "the public safety and the efficient movement of vehicular traffic." *South Dakota v. Opperman,* 428 *U.S.* 364, 369, 96 *S.Ct.* 3092, 3097, 49 *L.Ed.2d* 1000, 1005 (1976). Defendant was not *lawfully* capable of driving the car and it would have been unreasonable for the police to wait until he could "make other arrangements for the custody of the vehicle." *State v. Slockbower,* 79 *N.J.* 1, 4 (1979). He had at the time no valid driver's license and "the registration on the vehicle was suspended." In that situation, to allow him to drive the vehicle would have been "countenancing continuous violations." *State v. Roberson,* 156 *N.J.Super.* 551, 555 (App. Div.1978), certif. den. 77 *N.J.* 487 (1978); see *N.J.S.A.* 39:3–4 and *N.J.S.A.* 39:3–10. In the circumstances, "substantial necessities grounded in the public safety," *State v. Slockbower, supra,* 79 *N.J.* at 12, mandated the impoundment. *And see, State v. Mangold, supra,* 82 *N.J.* at 585.

■ Beyond this, we find reliance by defendant and the trial judge on the holding in *Mangold,* at 82 *N.J.* 587, that "[a]bsent consent or alternative security provisions, an inventory may be not undertaken," to be misplaced. The inventory of defendant's car was undertaken on October 25, 1979, more than six months before the *Mangold* decision.[3] Consistent with pertinent principles expressed in *State v. Carpentieri,* 82 *N.J.* 546 (1980), *State v. Howery,* 80 *N.J.* 563, 568–571 (1979), *cert.* den. 444 *U.S.* 994, 100 *S.Ct.* 527, 62 *L.Ed.2d* 424 (1979), and *United States v. Pel-*

---

[3] *State v. Mangold* was decided by the Supreme Court on May 19, 1980.

*tier,* 422 *U.S.* 531, 535–537, 95 *S.Ct.* 2313, 2316–2317, 45 *L.Ed.*2d 374, 380–381 (1975), we perceive no sound basis for applying the *Mangold* holding retroactively to invalidate the police inventory of the automobile in this case. On the contrary, we are entirely satisfied that consideration of the "relevant factors"[4] involved in determining the proper approach to the applicability of the "new variant of the exclusionary rule device," *State v. Howery, supra,* 80 *N.J.* at 569, announced in *Mangold,* requires that this "new variant" be given prospective application only. Since the impoundment and inventory were entirely valid at the time, defendant's motion to suppress the evidence seized during the course of the inventory should have been denied.

In view of our determination, we find no need to comment on the State's contention that "[t]he seizure of the methadone may be upheld pursuant to Office Kraemer's [*sic*] plain view observation."

The order granting defendant's motion to suppress, under review, is reversed. The matter is remanded to the Law Division for further proceedings consistent herewith. We do not retain jurisdiction.

---

[4]Discussed at length in *State v. Howery, supra,* 80 *N.J.* at 568–571.