**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1443-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent/
Cross-Appellant,

v.

JOSE R. MORALES-RIVERA,

    Defendant-Appellant/
Cross-Respondent.

_____

Argued March 14, 2022 – Remanded March 18, 2022
Resubmitted July 19, 2022 – Decided August 4, 2022

Before Judges Sabatino and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-04-0066.

Mazraani & Liguori, LLP, attorneys for appellant/cross-respondent (Jeffrey S. Farmer, of counsel and on the briefs).

Matthew J. Platkin, Acting Attorney General, attorney for respondent/cross-appellant (Adam D. Klein, Deputy Attorney General, of counsel and on the briefs).

PER CURIAM

This matter returns to us pursuant to a March 18, 2022 order temporarily remanding to the trial court "for a ruling on the applicability of the automobile exception under State v. Witt"[1] regarding a motion to suppress physical evidence filed by defendant Jose R. Morales-Rivera.

Shortly before the March 14, 2022 appellate argument date, we discovered counsel failed to supply a transcript of the March 19, 2019 suppression hearing before the trial court. After receiving that transcript, we learned the State had argued in opposition to the suppression motion that law enforcement's warrantless search of defendant's car was justified pursuant to the automobile exception to the warrant requirement under Witt. However, the trial judge did not address this specific argument.

After hearing counsels' appellate arguments, we allowed the parties to submit supplemental briefs regarding the applicability of the automobile exception under Witt to the facts of this case. Subsequently, we issued an order temporarily remanding the matter to the trial court for the limited purpose of ruling on whether the Witt exception justified the warrantless search of defendant's car.

---

[1] 223 N.J. 409 (2015).

A-1443-20

We retained jurisdiction and allowed either party to pursue appellate review after the trial court's remand decision by filing an expanded notice of appeal on behalf of defendant or a notice of cross-appeal on behalf of the State. Consistent with our remand order, the trial judge issued an April 4, 2022 written decision, finding the <u>Witt</u> exception to the warrant requirement inapplicable.

Based on the judge's decision on the remanded issue, the State filed a cross-appeal. We now address the issues raised in defendant's appeal and the State's cross-appeal. For the reasons that follow, we reverse the March 21, 2019 order applying the inevitable discovery doctrine to justify the warrantless search of defendant's car and affirm the April 4, 2022 order finding the automobile exception under <u>Witt</u> inapplicable.

We summarize the facts from the record on defendant's suppression motion. Relying on information provided by a confidential informant, the New Jersey State Police planned a "buy-bust" operation, and arranged for an undercover detective to purchase cocaine from Jose Ventura-Guardado. On January 24, 2018, at approximately 6:00 p.m., Ventura-Guardado placed a telephone call to arrange a drug buy. Around 7:30 p.m., defendant and co-defendant Gerardo Rivera-Robles arrived by car at the apartment complex designated for the physical exchange of drugs and money. The police had no

information regarding the make or model of the car being used to complete the drug transaction. Rather, the law enforcement team watched every car entering the apartment complex for indicia of the planned drug deal.

During this timeframe, an undercover officer saw Ventura-Guardado remove a package from a gray Acura driven by defendant. At that moment, the undercover officer gave the "go" signal for other officers involved in the buy-bust operation to arrest all participants.[2] Simultaneously, another officer deployed a flash-bang device to distract the participants involved in the drug exchange. Ventura-Guardado purportedly dropped a package containing drugs into defendant's car when the flash-bang device discharged. Defendant and the co-defendant were arrested as a result of the buy-bust operation.

Three months after his arrest, defendant was indicted on the following charges: second-degree conspiracy to distribute cocaine and launder money, N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(1), N.J.S.A. 2C:21-25(a); first-degree possession with intent to distribute cocaine, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5(b)(1), and N.J.S.A. 2C:2-6; third-degree

---

[2] There were approximately thirty-six law enforcement officers on site for the planned buy-bust operation.

possession of cocaine, N.J.S.A. 2C:35-10(a)(1); and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a) and N.J.S.A. 2C:2-6.

Defendant moved to suppress drug-related evidence seized from his car.[3] The motion judge heard testimony on the suppression motion over three non-consecutive days in November and December 2018. Detective Sergeant Jeffrey Gauthier testified for the State. Defendant presented testimony from a private investigator, David Gamble. During the suppression hearings, the State relied on the plain view exception to the search warrant requirement to justify the seizure of the drug evidence found in defendant's car.

Two months prior to the first scheduled suppression hearing, the judge invited counsel to brief the applicability of the inevitable discovery doctrine as a separate exception to the search warrant requirement. At that time, the State maintained the seizure of the cocaine was lawful under the plain view exception.

During the suppression hearings, Detective Gauthier explained his participation in the buy-bust operation. After he received the "go" signal from

---

[3] Defendant sought to suppress the following seized items: a kilo of cocaine; bank records; and cash. Law enforcement removed other evidence from defendant's car during the buy-bust operation. However, the additional evidence was not the subject of defendant's suppression motion.

the undercover officer, Gauthier drove from the off-site location where he parked his car to the apartment complex and assisted in the arrests.

The undercover officer, who did not testify during the suppression hearings, purportedly saw Ventura-Guardado drop the cocaine into defendant's car after a flash-bang device deployed. Because Gauthier was not on scene at the time, the undercover officer reported this information to Gauthier.

With this information, Gauthier turned his attention to defendant's car. According to Gauthier, because the front passenger door was ajar, he noticed cocaine on the passenger side floorboard of the car. Gauthier testified he took several photographs of the cocaine in defendant's car using a personal cell phone. The photographs were admitted as evidence during the suppression hearings. After Gauthier photographed the evidence, a different officer secured defendant's car and removed the cocaine.

Gauthier explained the police towed defendant's car to an impound location and "kept it there in evidence." Counsel stipulated the police "junk titled"[4] the car ninety-nine days after towing the vehicle to the impound lot. According to Gauthier, if he had not seen the cocaine in plain view, he was

_____

[4] N.J.S.A. 39:10A-8 to -12 permits the issuance of a junk-title certificate so a vehicle may be sold rather than stored forever.

"absolutely ready for a search warrant based on the information [they] had leading up to that point."

At the next suppression hearing, Gauthier testified he deleted some photographs of the cocaine taken with his personal cell phone. He claimed the deleted photographs were either blurry or distorted. Gauthier denied moving or touching the cocaine in defendant's car while photographing the drugs.

During the final suppression hearing, David Gamble, a former crime scene investigator, produced enhanced versions of Gauthier's original cell phone photographs. The enhanced photographs proffered by Gamble were "zoomed-it" and brighter than the original photographs taken with Gauthier's cell phone. Through Gamble's testimony, defense counsel argued the enhanced photographs demonstrated the cocaine was not on the floor of defendant's car. Rather, Gamble testified the drugs were on the passenger seat because the photographs displayed someone's thumb touching the black plastic bag with the cocaine on the car's seat. Gamble's testimony challenged the veracity of Gauthier's testimony regarding the location of the cocaine, suggesting the evidence had been repositioned before Gauthier photographed it.

At the conclusion of the suppression hearings, counsel presented written summations. In its written summation and during oral argument on defendant's

motion, the State asserted the evidence seized from defendant's car was admissible based on the automobile exception under Witt. While the State discussed the automobile exception during the March 19 court proceeding, the judge never ruled on the State's argument the Witt exception supported the warrantless search of defendant's car.

Based on the testimony, documentary evidence, written submissions, and oral argument, the judge issued a written decision, finding Gauthier's testimony was "contradicted" by Gamble's testimony. Relying on Gamble's testimony and his enhanced photographic evidence, the judge concluded the cocaine in defendant's car had been "located on the seat, rather than on the floor." The judge noted, "[t]he State had the opportunity to rebut Mr. Gamble's interpretation of what was depicted in the photos and they failed to offer any evidence to rebut the testimony of Mr. Gamble."

Due to "many inconsistencies . . . in the testimony of Det. Sgt. Gauthier[], especially as to material issues pertaining to whether the CDS was observed in plain view . . . on the floor in front of the front passenger seat[,]" the judge sidestepped ruling on the State's plain view exception. Rather, the judge denied defendant's suppression motion "because the evidence seized [was] admissible due to the application of the inevitable discovery doctrine."

Because defendant did not dispute the cocaine was in his car and the police towed the car to an impound lot, the judge concluded the police inevitably would have discovered the cocaine during an inventory search. The judge, relying on the two-part inquiry under State v. Mangold, 82 N.J. 575 (1980), determined an inventory search would have been reasonable under the circumstances. To invoke the inevitable discovery doctrine for a warrantless search, the State must prove: (1) impoundment of the property was justified and (2) the inventory procedure was legal. Id. at 583.

In his analysis, the judge held the State satisfied the first prong of the Mangold analysis because there was reasonable and proper justification for the impoundment of defendant's car under N.J.S.A. 2C:43-2.4(a)(5), allowing law enforcement to impound a motor vehicle used in the commission of an offense under N.J.S.A. 2C:35-10(a) or N.J.S.A 2C:25-5. Additionally, citing N.J.S.A. 2C:64-1, the judge found impoundment of defendant's car was proper because "it was subject to forfeiture in light of the fact that it was allegedly used in the course of criminal activity."

After determining impoundment of defendant's car was justified, the judge wrote, "[t]here can be no doubt that even if the contraband was hidden in the vehicle, an inventory search would have resulted in the discovery of the

evidence" and "the discovery of this evidence would have occurred wholly independent of the issue of plain view." However, the State presented no evidence regarding law enforcement's procedure associated with an inventory search of impounded vehicles. Consequently, the judge made no fact findings under <u>Mangold</u>'s second prong addressing the legality of an inventory search. Despite the absence of any evidence supporting the lawfulness of an inventory search of defendant's car, the judge denied defendant's suppression motion, declaring the evidence seized without a warrant was justified based on the inevitable discovery doctrine.

Defendant moved for reconsideration of the judge's denial of his suppression motion. In an April 26, 2019 order, the judge denied the motion.

Thereafter, defendant pleaded guilty to second-degree possession with intent to distribute cocaine. Defendant reserved the right to appeal the denial of his motion to suppress evidence. In accordance with the negotiated plea, on January 11, 2021, the judge sentenced defendant to an eight-year state prison term.

On appeal, defendant argued the following:

> THE TRIAL COURT ERRED IN DENYING
> DEFENDANT'S MOTION TO SUPPRESS
> EVIDENCE AS THERE WAS [NO] TESTIMONY IN

THE RECORD CONCERNING EFFORTS TO IMPOUND THE VEHICLE.

When reviewing a motion to suppress, we will "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). This is especially true of findings "which are substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case . . . ." State v. Johnson, 42 N.J. 146, 161 (1964). We review a trial court's legal conclusions de novo. Handy, 206 N.J. at 45.

To invoke the inevitable discovery doctrine, the State must clearly and convincingly show the evidence obtained from the illegal police activity would have been discovered independent of a constitutional violation. State v. Sugar (III), 108 N.J. 151, 157 (1987); see also Nix v. Williams, 467 U.S. 431, 443 (1984). Applying this standard, the State must prove that (1) proper investigatory procedures would have been followed; (2) those methods would have inevitably resulted in the discovery of the evidence; and (3) the discovery would have occurred independent of the unlawful seizure. Sugar (III), 108 N.J. at 156-57.

A-1443-20

Under the inevitable discovery doctrine, the State must justify both impoundment of the vehicle and an inventory search of the vehicle. Mangold, 82 N.J. at 583. Here, defendant conceded impoundment of his car was authorized by N.J.S.A. 2C:43-2.4(a)(5). Additionally, because defendant used the car in the commission of a crime, possession of drugs with the intent to distribute, defendant forfeited his property interest in the vehicle. See N.J.S.A. 2C:64-1(a)(2). The police were not required to obtain his consent to search the vehicle or allow defendant to make alternative arrangements before impounding the car. Ibid.

However, even where impounding a vehicle is lawful pursuant to a statute, we must determine whether the judge correctly applied the inevitable discovery doctrine and inventory search exception to justify the warrantless search of defendant's car. The purpose of an inventory search is "protection of the inventoried property while in police custody, shielding the police and storage bailees from false property claims, and safeguarding the police from potential danger." Mangold, 82 N.J. at 581-82 (citing South Dakota v. Opperman, 428 U.S. 364, 369 (1976)). The judge is required to scrutinize the record to determine the reasonableness of an inventory search before admitting evidence seized under this exception to the search warrant requirement. Id. at 584.

To establish the inevitable discovery of evidence through a valid inventory search, we consider the following factors: "the scope of the search, the procedure used, and the availability of less intrusive alternatives . . . ." Ibid. "Mere lawful custody of an impounded vehicle does not ipso facto dispense with the constitutional requirement of reasonableness mandated in all warrantless search and seizure cases." Ibid. Although the State "need not establish the exclusive path leading to the discovery" of the evidence, it must "present facts sufficient to persuade the court, by a clear and convincing standard, that the [evidence] would be discovered." Sugar (III), 108 N.J. at 158.

Here, the State proffered no evidence related to the reasonableness of an inventory search of defendant's car. Despite the lack of any information regarding an inventory search, the judge concluded, "[t]here can be no doubt that even if the contraband was hidden in the vehicle, an inventory search would have resulted in the discovery of the evidence." The judge offered no explanation why an inventory search in this case would have been reasonable.

We reject the State's argument the police inevitably would have discovered the cocaine and other drug evidence in defendant's car through a lawful inventory search after impounding the vehicle. In this case, law enforcement clearly had the ability to obtain a valid search warrant as part of

the buy-bust operation. The operation involved substantial advanced planning, and such planning could have included securing a vehicle suspected to be transporting drugs while law enforcement applied for a search warrant. Approximately thirty-six law enforcement officers participated in this buy-bust operation. Based on the significant number of law enforcement personnel at the scene, on-site officers could have easily secured defendant's car while another officer contacted a judge to obtain a search warrant. In fact, Detective Gauthier testified that had he not seen the cocaine in plain view on the floor of defendant's car, he was prepared to obtain a search warrant.

Based on the evidence adduced during the suppression hearings, we are satisfied the inevitable discovery doctrine did not justify the warrantless search of defendant's car because the State presented no testimony related to the procedure of the inventory search of defendant's car after it was impounded. Thus, we reverse the judge's admission of the drug evidence found in defendant's car under the inevitable discovery doctrine and related inventory search.

During the oral argument on appeal, the State contended our decision in State v. Ford, 278 N.J. Super. 351, 355-56 (App. Div. 1995) justified the warrantless seizure of the drug evidence from defendant's car because any privacy interest was extinguished when the officers saw the cocaine dropped

into the car. Because the issue was not briefed, we invited the parties to submit supplemental briefs on this limited issue. Having reviewed the supplemental briefs, we reject the State's argument relying on Ford.

The Ford case involved a surveillance operation where police officers observed the defendant walking along the outside of a house, kneeling down to retrieve an item hidden in a plastic bag, subsequently returning the bag to the location outside of the house, and completing a drug transaction. Id. at 353. After the defendant's arrest, an officer retrieved a bag containing cocaine from the side of the house. Id. at 353-54. In upholding the warrantless search for drugs in Ford, we concluded the "officers' visual observations of the defendants during [commission of the drug transaction], and given the observation of the contraband and its place of attempted concealment in an exterior portion of [a] house accessible by anyone from the outside without entering the house, no compelling constitutional interests require suppression of the seized contraband from its known location." Id. at 357.

The facts in Ford differ from the facts before us on appeal. Here, while the undercover officer saw a black plastic bag dropped into defendant's car when a flash-bang device deployed, there remained a reasonable expectation of privacy in the car's interior. See State v. Hempele, 120 N.J. 182, 215 (1990)

(rejecting the warrantless seizure of curbside garbage because the contents of the closed garbage bag were not exposed to the public). Once the bag dropped into defendant's car, there was no longer potential public exposure to any drug-related activities, unlike in <u>Ford</u> where the drugs located outside a home remained readily accessible to the public.

We next consider whether the warrantless search and subsequent seizure of drug-related evidence from defendant's car was justified under the automobile exception to the warrant requirement enunciated in <u>Witt</u>. On remand, the judge rejected the State's argument the warrantless search of defendant's car was permissible under <u>Witt</u> because the circumstances were not "unforeseeable and spontaneous." <u>Witt</u>, 223 N.J. at 450.

The judge found there was no evidence the location of defendant's car, in the rear parking lot of an apartment complex, posed "a risk to the travelling public as well as to the police" to invoke the <u>Witt</u> exception. He noted "the police had every reason to anticipate and expect that a drug transaction was to take place at or about the designated time and place." The judge made the following factual findings: "there was no threat to the police or the travelling public when the search was performed"; "[t]he search occurred in a parking lot so there was little or no traffic occurring at the time of the search"; "the scene

was secured, which mitigated the risk to the travelling public and/or the officers"; and "[d]efendants were placed under arrest so the [d]efendant's detention would not cause any additional prejudice due to the time it would take for either the police to obtain a search warrant or for the vehicle to be impounded and searched."  The judge further explained:

> this was a pre-arranged buy-bust operation.  There is no dispute that the police fully expected a drug transaction to occur.  The police knew in advance where and approximately when the transaction was going to take place.  Law enforcement was prepared to immediately secure the location once the transaction did take place.  In light of this, the facts fail to establish that the discovery of drugs occurred in a manner that was unforeseeable and spontaneous.

As permitted in our March 18, 2022 remand order, we allowed the State to file a cross-appeal challenging the judge's ruling on the Witt exception to justify the search of defendant's car.  On the cross-appeal, the State argues:

> PROBABLE CAUSE TO SEARCH A PARTICULAR CAR AROSE SPONTANEOUSLY AND UNFORESEEABLY, AUTHORIZING THE WARRANTLESS SEIZURE OF THE COCAINE UNDER THE AUTOMOBILE EXCEPTION.

We disagree and affirm.

In Witt, our Supreme Court addressed whether the exigent circumstances test for a warrantless search of an automobile "is unsound in principle and

unworkable in practice." 223 N.J. at 414. Finding the exigent circumstances test "[did] not provide greater liberty or security to New Jersey's citizens and has placed on law enforcement unrealistic and impracticable burdens," the Witt Court announced, "[g]oing forward, searches on the roadway based on probable cause arising from unforeseeable and spontaneous circumstances are permissible. However, when vehicles are towed and impounded, absent some exigency, a warrant must be secured." Id. at 450.

Subsequent to the Court's decision in Witt, we decided State v. Rodriguez, 459 N.J. Super. 13 (App. Div. 2019), finding the decision in Witt "afford[s] police officers at the scene the discretion to choose between searching the vehicle immediately if they spontaneously have probable cause to do so, or to have the vehicle removed and impounded and seek a search warrant later." Rodriguez, 459 N.J. Super. at 23.

Here, reasonable, articulable suspicion of a drug activity arose prior to defendant driving his car into the apartment complex parking lot. Specifically, the police suspected drug activity would take place in that parking lot based on information provided by a confidential informant and an undercover officer. The police knew the exact location where the drugs were to be purchased, the day the transaction would take place, and the approximate time of the sale. The

police also pre-planned the deployment of a flash-bang device to distract the participants involved in the drug transaction.

When the flash-bang triggered, the undercover officer saw a package containing suspected drugs drop into defendant's car. At that moment, law enforcement had sufficient information and probable cause to seek a search warrant. Given the thirty-six officers involved in the planned operation, defendant's car easily could have been secured while the police obtained a search warrant. The failure to obtain a search warrant under these circumstances supported suppression of the drug evidence seized from defendant's car.

Having reviewed the record, we are satisfied law enforcement participated in a detailed, well-planned operation involving the sale and purchase of illegal drugs. Due to the nature of a buy-bust operation, the very purpose of law enforcement's action was designed to prevent the suspected sale of drugs. The decision to search defendant's car after the police detonated the flash-bang device was not unforeseeable and spontaneous simply because law enforcement did not know the make and model of the car that would be used to transport the illegal drugs. Thus, the trial judge correctly rejected the State's argument in support of the warrantless search under Witt.

The order denying defendant's motion to suppress evidence seized from his car is reversed and the judgment of conviction is vacated. The charges dismissed as part of the negotiated plea agreement are reinstated. The matter is remanded to the trial court for further proceedings regarding the State's charges against defendant.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1443-20