**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1730-21

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CHRIS A. BENTON, a/k/a
CRAIG MCCUTCHEN,
SAMUEL MCCUTCHEN,
KEITH HOWARD,
CARL ANDERSON, and
CHRIS BENTON,

      Defendant-Appellant.

_____

Argued November 8, 2023 – Decided February 15, 2024

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-08-1151 and Accusation No. 21-07-0645.

Lucas B. Slevin, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Elizabeth Cheryl Jarit, Deputy Public Defender, of counsel and on the briefs).

Randolph E. Mershon III, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Erin M. Campbell, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress, defendant Chris A. Benton pled guilty to three counts of third-degree possession of a controlled dangerous substance with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3), and was sentenced consistent with his negotiated plea to a 364-day custodial term with four years of probation. He appeals from the decision denying his suppression application, his sentence, and the imposition of certain fines, and raises the following issues for our consideration:

> I. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE NO PROBABLE CAUSE EXISTED TO REMOVE A NON-DESCRIPT PILL BOTTLE FROM DEFENDANT'S WAISTBAND, BECAUSE NO PROBABLE CAUSE EXISTED TO SEARCH HIS VEHICLE, AND BECAUSE THE INVENTORY SEARCH COULD NOT APPLY AS DEFENDANT WAS NEVER BOOKED AND JAILED.
>
> A. THE POLICE LACKED PROBABLE CAUSE TO REMOVE AN INNOCUOUS-LOOKING PILL BOTTLE FROM MR. BENTON'S PANTS.
>
> B. THE POLICE LACKED ANY INDIVIDUALIZED OR PARTICULAR SUSPICION

THAT MR. BENTON'S VEHICLE CONTAINED EVIDENCE OF ANY CRIME.

C. THE SEARCH AT THE POLICE STATION WAS NOT JUSTIFIED AS AN INVENTORY SEARCH BECAUSE MR. BENTON WAS NEVER BOOKED AND JAILED.

II. BECAUSE THE COURT FAILED TO PROVIDE AN ADEQUATE STATEMENT OF REASONS FOR SENTENCING AND CONSIDERED DEFENDANT'S SUBSTANCE DEPENDENCY TO ONLY FIND AGGRAVATING FACTORS, RESENTENCING IS REQUIRED.

III. A REMAND FOR REASSESSMENT OF FINES IS REQUIRED BECAUSE THE COURT INCORRECTLY BELIEVED IT WAS REQUIRED TO IMPOSE TWO DRUG ENFORCEMENT AND DEMAND REDUCTION PENALTIES WHEN IT HAD THE DISCRETION TO IMPOSE ONE. (Not raised below)

We reject defendant's arguments in Point I and affirm his convictions. We agree, in part, however, with his arguments in Points II and III, and accordingly remand the matter with directions for the sentencing judge to articulate the reasons for his sentencing decision and to address the propriety of imposing multiple drug enforcement and demand reduction (DEDR) penalties.

I.

The events leading to defendant's arrest were described in detail at the suppression hearing in which Detective Sean Freeman, a New Brunswick Police

3

Officer with six years of experience with the New Brunswick Police Department, and approximately nine years of law enforcement experience overall, was the sole witness. The detective's training and experience included the manner in which heroin and cocaine are packaged as well as the distribution and sale of controlled dangerous substances generally.

Detective Freeman stated that during the afternoon of May 21, 2018, he and Officers Monticello and Powers[1] of the New Brunswick Police Department were patrolling a high-crime area in plainclothes and in an unmarked car as members of the Street Crimes Unit. Detective Freeman testified he previously made "[s]eventy, maybe [one] hundred" arrests in the area defendant was arrested, and those arrests were of a "wide variety," but "mostly narcotics."

During their patrol, the officers observed defendant's vehicle "fail to come to a complete stop at a stop sign and improperly use its turn signal," and also noticed the vehicle circle the block. Based on the aforementioned traffic infractions, the officers decided to conduct a motor vehicle stop. Officer Monticello approached the defendant who was driving the car, while Officer Powers and Detective Freeman interacted with the passenger.

---

[1] The record does not include the first names of Officers Monticello and Powers.

A-1730-21

When Officer Monticello asked defendant for his license and registration, Detective Freeman testified he "fumbl[ed] through the paperwork and you could . . . see his hands shaking." He also failed to make "direct eye contact with Officer Monticello," repeated himself, and spoke in a low tone. Based on these observations, Officer Monticello asked defendant to step out of the car, where he was immediately directed to the rear of his vehicle to speak with Detective Freeman, who observed defendant's "shirt tucked in, and a bulge." Detective Freeman testified he attempted to discern the source of the bulge when he noticed the "cap of pill bottle, a white cap . . . protruding from [defendant's] underwear, between his shirt and underwear."

When he asked defendant what was in his waistband, he "immediately" replied, "'[y]ou got me,' and began to reach for the pill bottle." At that point, Detective Freeman told defendant to place his hands on his head and removed the pill bottle. Detective Freeman testified the pill bottle was green tinted but he "could clearly see through it," and observed it contained "several packets of heroin and crack cocaine."

After Detective Freeman removed the green pill bottle, he immediately observed and removed a second container, located in the same area as the first, which he described as blue with a white lid and with markings from a local

5

hospital that he could not see through. Detective Freeman testified defendant was then formally placed under arrest, and a further search of defendant was conducted incident to his arrest, which uncovered no further contraband.

The police also questioned the passenger of the vehicle, and after confirming he had no active warrants, released him from the scene. According to Detective Freeman, police then searched defendant's vehicle, because "[defendant] exited the vehicle with that amount of narcotics on him, we believed there would be more narcotics in the vehicle." That search revealed a brown paper bag containing approximately "fifty packets" of heroin. Detective Freeman stated the bag was either in a cup holder or on the floor of the vehicle and acknowledged the bag was not in plain view.

Defendant was transported to police headquarters where he was "processed," which according to Detective Freeman meant he was "[f]ingerprint[ed], photographed, [] searched a second time . . . placed in a cell, issue[d] a motor vehicle summons . . . and released on a summons complaint." This second search of defendant resulted in the seizure of $141 in assorted U.S. currency. A later search of the green pill bottle revealed twenty-two packets of heroin and five bags of crack cocaine and a search of the blue container revealed 120 packets of heroin and five packets of crack cocaine.

6

Defendant moved to suppress the drugs located in the two pill bottles and the heroin in the bag found in his car.[2] The court denied defendant's application in a March 4, 2019 written opinion. In its decision, the court found the officers were justified in executing the motor vehicle stop because they observed defendant commit multiple traffic violations. The court also concluded the officers had probable cause to order defendant out of his vehicle, thus seizing defendant, for their own safety, because defendant was "acting nervously and fumbling with his paperwork . . . mumbling and speaking in a low tone while avoiding eye contact with the officers."

The court rejected the State's argument the officers had probable cause to arrest defendant based solely on their observations prior to defendant's removal from the vehicle. The court stated, "it does not appear that probable cause existed based only on the [d]efendant's nervousness and tone while inside the vehicle," because the pill bottle was not "in plain view," until defendant was asked out of the vehicle. The court found, however, "probable cause was strengthened" after defendant said, "you got me," to Detective Freeman. At that

---

[2] Before us defendant has not reprised his argument that his inculpatory statement – "you got me" should be suppressed because he was not read his <u>Miranda</u> rights. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). We accordingly do not address those arguments and consider them waived.

point, the court concluded, defendant's "presence in the high-crime area, his nervousness, and the strange placement of the pill bottle (in the waistband of his underwear)," made the officers' "suspicion that a crime was being committed objectively reasonable."

The court found the arrest valid, prior to the search, "because of the [d]efendant's nervous behavior and the presence of a pill bottle in his waistband," and "[defendant's statement] tips the balance of reasonable suspicion in the officers' favor, making the determination of probable cause objectively reasonable." Because officers had the "right to arrest" defendant, the court, relying on State v. O'Neal, 190 N.J. 601, 614 (2007), held it was inconsequential the search occurred prior to defendant's incident to arrest.

The court also concluded the warrantless search of defendant's vehicle was proper. Relying on State v. Witt, 223 N.J. 409, 447 (2015) and State v. Alston, 88 N.J. 211, 233 (1981), the court explained, under the automobile exception, New Jersey courts "permit warrantless searches of (1) readily movable vehicles when (2) the police officers have probable cause to believe that the vehicle contains contraband or evidence of a crime and (3) the circumstances giving rise to probable cause are unforeseeable and spontaneous."

A-1730-21

Applying this test, the court acknowledged the mere presence of drugs on defendant did not "automatically create probable cause to search his vehicle," but concluded, here, "the amount of heroin and cocaine recovered from [d]efendant's person—multiple bags of both narcotics—was reasonabl[y] assumed not to be purely for personal use." As such, the court found the officers had reason to believe more narcotics would be found in the vehicle, and therefore established probable cause to conduct the search. Finally, the court noted, as defendant did not contest the second search at the police station, it would not suppress the $141.

In a nine-count indictment, defendant was charged with two counts of possession of a CDS (counts one and five), possession of a CDS with intent to distribute (counts two and six), possession of a CDS with intent to distribute within 1,000 feet of a school (counts three and seven), and possession of a CDS with intent to distribute within 500 feet of certain public property (counts four and eight), and one count of financial facilitation of a crime (count nine). On June 7, 2021, defendant pled guilty to two third-degree counts of possession of a CDS with intent to distribute (counts two and six) and the remaining counts of the indictment were dismissed.

9

Defendant was later arrested on separate drug offenses, waived indictment and was charged in Accusation No. 21-07-645-A with third-degree possession of CDS with intent to distribute (count one); two counts of third-degree possession of CDS (counts two and three); and third-degree conspiracy to distribute CDS (count four). Defendant ultimately pled guilty to a single third-degree count with regard to the accusation, with all remaining charges dismissed. As a result, defendant entered guilty pleas to three counts of third-degree possession of CDS with intent to distribute.

On October 12, 2021, the court sentenced defendant, consistent with his plea, to two concurrent terms of four years' probation contingent on 364 days in county jail. When sentencing defendant, the court found aggravating factors three, "[t]he risk that the defendant will commit another offense," N.J.S.A. 2C:44-1(a)(3); six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which the defendant has been convicted," N.J.S.A. 2C:44-1(a)(6); and nine, "[t]he need for deterring the defendant and others from violating the law," N.J.S.A. 2C:44-1(a)(9), outweighed the non-existent mitigating factors. The court also imposed various penalties and fees, including a $2,000 DEDR penalty. After issuing an amended Judgment of Conviction to

correct the charge and degree listed for the conviction with respect to Accusation No. 21-07-645-A, this appeal followed.

## II.

In defendant's first point, he contends the motion court erred in denying his suppression motion because officers lacked probable cause to remove the non-descript pill bottle from defendant's waistband and to search his vehicle. Specifically, in Point I.A., defendant, relying on <u>Russell v. Coyle</u>, 266 N.J. Super. 651, 654 (App. Div. 1993), and authority from other jurisdictions, argues Detective Freeman's observation of the top of a prescription pill bottle in defendant's waistband did not create probable cause that the bottle contained evidence of a crime.

Defendant also argues the court, in concluding the police had probable cause to search him, improperly "relied heavily on his presence in a high crime area as well [as] his nervous behavior and lack of eye contact during the motor vehicle stop," citing to <u>State v. Pineiro</u>, 181 N.J. 13 (2009), <u>State v. Nyema</u>, 249 N.J. 509, 533 (2022), and <u>State v. Goldsmith</u>, 251 N.J. 384, 404 (2022). Defendant specifically contends police failed to provide specific evidence of the "high crime" area patrolled and failed to articulate the connection between defendant's nervousness and any criminality.

11

Defendant further asserts defendant's statement, "you got me," did not "tip the balance" towards establishing probable cause, either with respect to defendant's arrest or the seizure of the pill bottle. Defendant maintains at the time of the statement, police only observed traffic violations and nervous behavior in a high crime area, and there was nothing to indicate defendant was involved in criminal activity or possessed contraband. Defendant claims his statement was at best ambiguous, could have referred to the traffic stop, or, at most, could have "aroused suspicion."

In Point I.B., defendant argues even if the seizure of the two pill bottles was proper, police did not have probable cause, specific and individualized to the vehicle, to conduct a warrantless search under the automobile exception. Relying on State v. Chippero, 201 N.J. 14, 31 (2009), defendant asserts the narcotics found in the pill bottles "does not automatically permit the search of other constitutionally protected areas." Defendant maintains police failed to articulate a basis to establish probable cause that contraband would be found inside the vehicle, and thus engaged in an unlawful search. On this point, defendant also relies on State v. Wilson, 178 N.J. 7, 15 (2003), for the proposition the quantity of narcotics found on an individual does not, alone, create probable cause for police to search a vehicle without a warrant.

We disagree with all of these arguments and conclude that the court correctly determined the officers possessed probable cause to conduct a warrantless search of defendant and his vehicle. On this point, we affirm therefore substantially for the reasons stated by the trial court in its comprehensive written decision. We add only the following comments.

## III.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing such an application, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). "Those findings warrant particular deference when they are 'substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (alteration in original). We review de novo the judge's pure determinations of law, State v. Mann, 203 N.J. 328, 337 (2010), as well as the application of legal principles to factual findings. State v. Harris, 181 N.J. 391, 416 (2004).

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language,

A-1730-21

protect against unreasonable searches and seizures." State v. Smart, 253 N.J. 156, 164 (2023) (quoting Nyema, 249 N.J. at 527). "Warrantless seizures are presumptively invalid as contrary to the United States and the New Jersey Constitutions." Pineiro, 181 N.J. at 19.

"To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.'" State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023) (quoting State v. Chisum, 236 N.J. 530, 546 (2019)). Each exception to the warrant requirement has their own essential elements that must be satisfied to justify a warrantless search. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023).

One such exception to the warrant requirement is the search incident to arrest, an exception "limned for two specific purposes—the protection of the police and the preservation of evidence." State v. Eckel, 185 N.J. 523, 524 (2006). Under this exception to the warrant requirement, "an officer [has] the right to search a defendant's person without a warrant if there is probable cause to arrest." State v. Roman-Rosado, 462 N.J. Super. 183, 201 (App. Div. 2020).

14

In State v. O'Neal, our Supreme Court held that under the search-incident-to-arrest doctrine, police may in certain circumstances conduct a search and remove drugs before actually placing the suspect under arrest. 190 N.J. at 614. The Court explained that when police search a person before arresting him or her "as part of a single, uninterrupted transaction, it does not matter whether the arrest precedes the search." Ibid. (quoting State v. Bell, 195 N.J. Super. 49, 58 (App. Div. 1984)). "It is the 'right to arrest,' rather than the actual arrest, that 'must pre-exist the search.'" Ibid. (quoting State v. Doyle, 42 N.J. 334, 342 (1964)).

Under the plain view exception, an officer may, without a warrant, "seize evidence or contraband that is in plain view." State v. Gonzales, 227 N.J. 77, 90 (2016). To lawfully seize evidence or contraband under this exception, the "officer must lawfully be in the area where he observed and seized the incriminating item or contraband, and it must be immediately apparent that the seized item is evidence of a crime." Id. at 101.

Pursuant to the automobile exception, our Supreme Court has long recognized "under our State Constitution, 'when the police have probable cause to believe that [a] vehicle contains contraband or evidence of an offense and the circumstances giving rise to probable cause are unforeseeable and spontaneous,'

law enforcement may search the vehicle without first obtaining a warrant." State v. Cohen, 254 N.J. 308, 319-20 (2023) (alteration in original) (quoting Witt, 223 N.J. at 447).

"Whether in the arrest context or in a search context, it is the same standard of proof that controls: probable cause." Chippero, 201 N.J. at 27. "In assessing whether probable cause exists, 'courts must look to the totality of the circumstances and view those circumstances . . . from the standpoint of an objectively reasonable police officer.'" State v. Diaz, 470 N.J. Super. 495, 529 (App. Div. 2022) (quoting State v. Gibson, 218 N.J. 277, 293 (2014)). "[C]ourts are to give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)).

We initially note defendant does not dispute the propriety of the police officers' actions in stopping his vehicle based on his undisputed motor vehicle violations, or removing him from his car based on their observations of his behavior when they asked him for routine credentialing information. Instead, defendant narrows his constitutional arguments to events that occurred after he

was at the rear of the vehicle, and argues the police conduct at that point violated his Fourth Amendment rights. We therefore limit our discussion accordingly.

In applying the aforementioned substantive principles, we pay close attention to the timing and requiring of the police officers' interaction with defendant. Once at the rear of the vehicle, defendant was observed with a pill bottle secreted in his waistband. When asked a simple question by Detective Freeman about the pill bottle, defendant "immediately" offered the inculpatory statement "you got me." We reject defendant's interpretation of that statement as innocuous or possibly related to the motor vehicle stop as unmoored to the record and specifically in the context under which the statement was made – while defendant was at the rear of the vehicle and in response to specific inquiry about the pill bottle.

The police action in seizing the pill bottle – while defendant was reaching for his waistband was entirely proper, as was the seizure of the second pill bottle hidden in the same peculiar location in defendant's waistband area. At the point defendant was asked to place his hands above his head, the police had the right to arrest him. Under the totality of the circumstances, which included Detective Freeman's training combined with defendant's presence in a high-crime area, his nervousness during their initial interaction, the location of the pill bottle, -

17

partially secreted and partially in plain view -, and defendant's damning inculpatory statement, the police had an objective belief that "an offense has been or is being committed." State v. Torres, 253 N.J. 485, 503 (2023) (quoting State v. Sims, 75 N.J. 337, 354 (1978)). Police also had the right to conduct a search incident to arrest without the need for a warrant. That the seizure occurred before the arrest is of moment under the circumstances as the court correctly concluded, see O'Neal, 190 N.J. at 614, as the search was "part of a single, uninterrupted transaction." Ibid.

Once the pill bottle was seized, and Detective Freeman observed multiple types of controlled dangerous substances, along with a second secreted pill bottle, the police clearly had probable cause to enter the vehicle under a totality of the circumstances analysis. As noted, at that point police observed defendant's unsettling behavior in the car, heard his inculpatory statement, and discovered defendant was in possession of at least one pill bottle containing multiple types of controlled dangerous substances. As the court recognized, while an individual's possession of narcotics does not automatically create probable cause to search a vehicle, significant additional facts existed here, including two pill bottles placed in defendant's waistband, one of which contained multiple drugs, which, together with the other circumstances of

18

police's interaction with defendant, established probable cause sufficient to search defendant's vehicle without a warrant. These facts, which were spontaneous and unforeseeable, more than sufficiently established the particularized belief the vehicle contained evidence of criminal activity. Rodriguez, 459 N.J. Super. at 22.

IV.

In Point I.C., defendant argues the search at the police station which revealed $141 was not justified as an inventory search because defendant was not booked and jailed. Defendant notes an inventory search is an exception to the general warrant requirement allowing police to search and inventory an arrestee's belongings before the arrestee is jailed. Defendant states this exception exists because police must hold an arrestee's belongings once an arrestee is jailed. If an arrestee is not jailed, defendant argues, "the police are not put in the position of becoming the bailee of the arrestee's property and the rationale requiring the seizure of the property no longer exists." Here, defendant contends he was wrongfully searched because he never jailed, and the $141 discovered should be suppressed. We find defendant's arguments of insufficient merit to warrant extended discussion in a written opinion and provide the following to amplify our decision. R. 2:11-3(e)(2).

We first note defendant never moved to suppress the $141 seized at the police station before the trial court. Because defendant did not raise this issue we could choose not to address it as "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). Although neither exception applies, we address defendant's arguments on the merits in the interest of completeness.

An exception to the Fourth Amendment warrant requirement is the inventory search. State v. Hummel, 232 N.J. 196, 207 (2018). "Police may search an arrestee without a warrant and inventory the property in the arrestee's possession before he or she is jailed." Id. at 208. An inventory search "is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." Illinois v. Lafayette, 462 U.S. 640, 645 (1983). Although administrative in nature, an inventory search, "is still a search and must be reasonable under the circumstances to pass constitutional muster." Hummel, 232 N.J. at 208.

"[T]he propriety of an inventory search involves a two-step inquiry: (1) whether the impoundment of the property is justified; and (2) whether the inventory procedure was legal." Ibid. (citing State v. Mangold, 82 N.J. 575, 583 (1980)). "For there to be a lawful inventory search, there must be a lawful impoundment," and if impoundment is justified, "[c]ourts need only analyze the reasonableness of the inventory search." Ibid. With respect to the reasonableness of the inventory search, courts will balance factors such as "the scope of the search, the procedure used, and the availability of less intrusive alternatives," to ensure the search is not "more intrusive than reasonably necessary to respond to the protective functions which fostered its creation." Id. at 208-09 (quoting Mangold, 82 N.J. at 584, 587).

Here, the search of defendant at the police station was lawful and reasonable and consistent with Hummel. As Detective Freeman testified, after his arrest at the scene, he was transported to the police station where he was processed, meaning he was fingerprinted, searched, placed in a cell, issued a summons, and ultimately released. Under those circumstances, the search and inventorying of defendant's possession was entirely justified and consistent with New Jersey law. Nothing in the record suggest the search was more intrusive than necessary or beyond the scope of a permissible inventory search.

21

V.

In Points II and III, defendant contends resentencing is required because the sentencing court failed to provide an explanation of its finding aggravating factors. Defendant also contends the sentencing court improperly weighed defendant's history of substance abuse as the court only found aggravating factors. He also maintains the sentencing judge erred in imposing two DEDR fines, as the court incorrectly believed imposing multiple fines was mandatory rather than discretionary.

We review defendant's sentence for abuse of discretion. State v. Pierce, 188 N.J. 155, 166 (2006). We affirm a sentence "unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

A sentencing court is obligated to examine the aggravating and mitigating factors enumerated in N.J.S.A. 2C:44-1(a) and (b). Id. at 72. Each factor found by the court must be relevant and supported by "competent, reasonably credible

22

evidence." Ibid. (quoting Roth, 95 N.J. at 363). The court then must conduct a qualitative balancing of the factors to determine the appropriate sentence. Id. at 72-73.

Here, the trial court provided no explanation for its conclusion that aggravating factors three, six, and nine applied. Nor did the court explain its finding that no mitigating factors, N.J.S.A. 2C:44-1(b), applied. Instead, after reviewing and recounting the facts in the presentence report, and those underlying defendant's arrests, the court's sole analysis is reflected in the following conclusory comments:

> In weighing the aggravating versus the mitigating factors, I find the following aggravating factors apply: 3, the risk the [d]efendant will commit another offense; 6, the extent of the [d]efendant's prior criminal history; and 9, the need for deterring the [d]efendant and others from violating the law. I find no mitigating factors. The aggravating factors substantially outweigh the mitigating factors. However, this is a negotiated plea, one which I can accept.

The absence of meaningful analysis in the trial court's sentencing decision warrants further fact finding. That is so because to "facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014). "[T]he judge shall state reasons for imposing [a] sentence including . . . the factual basis supporting a finding of

23

particular aggravating or mitigating factors affecting sentence."  R. 3:21-4(h).

A court's mere enumeration of aggravating factors is insufficient to survive

appellate review of a sentence.  Case, 220 N.J. at 65, 68.

In addition, we agree with defendant the court's analysis in applying two

DEDR penalties was contrary to law.  At sentencing, defendant's counsel

questioned the court's imposition of the fees, as reflected by the following

colloquy:

> Counsel:  Judge, why are there two -- deters on a one
> case?  A thousand for each –
>
> Court:  Two separate -- two separate counts.
>
> Counsel:  Well, Judge, I'm going to ask that you waive
> one of them.  I think it's in your discretion to do it --
>
> Court:  It's not.  It's mandatory.  If it is, show me the
> case law, and I'll do it.
>
> [(Emphasis added).]

Contrary to the court's statement, a defendant sentenced for more than one

drug offense is not subject to mandatory penalties for each offense.  Instead, as

N.J.S.A. 2C:35-15 provides, a defendant sentenced for multiple drug offenses

"may, in the discretion of the court, be assessed a single penalty applicable to

the highest degree offense for which the person is convicted" if the court finds

imposing multiple penalties "would constitute a serious hardship that outweighs

the need to deter" and the imposing a single penalty "would foster the defendant's rehabilitation." N.J.S.A. 2C:35-15(a). As it is clear the court mistakenly concluded it was without discretion to impose less than two $1,000 penalties, we remand for the court to address the propriety of multiple DEDR penalties.

In sum, we affirm defendant's convictions and remand for a further statement of reasons for the sentence imposed, including a meaningful discussion of any applicable aggravating and mitigating factors and the basis for imposing multiple DEDR penalties. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1730-21